503 A.2d 257

**BALTIMORE COUNTY, Maryland**

v.

**Charles A. PENN et al.**

**No. 585, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Jan. 17, 1986.

Certiorari Denied May 2, 1986.

200

James G. Beach, III (Malcolm F. Spicer, Jr., Co. Atty. and John A. Austin, Asst. Co. Atty., on the brief), Towson, for appellant.

Daniel J. Hanley (Hanley & Hanley, on the brief), Towson, for appellee.

Argued before GARRITY, ADKINS, ROBERT M. BELL, JJ.

ADKINS, Judge.

This case involves two former Baltimore County police officers, appellees Charles Penn and Wayne Henninger, who were granted accidental disability retirement benefits. Appellant, Baltimore County, thinks they did not deserve such generous treatment. The principal legal question presented is the nature and effect of a presumption contained in the County's disability retirement law.

The law in question consists of §§ 20–22 and 20–22.1 of the Baltimore County Code. Those provisions read as follows:

Sec. 20–22. Accidental disability benefit.

Upon the application of a member [of the Baltimore County employees' retirement system] in service, . . . any member who has been totally and permanently incapacitated for duty as the natural and proximate result of an accident occurring while in the actual performance of duty at some definite time and place, without wilful negligence on his part, shall be retired by the board of trustees; provided that the medical board shall certify that such member is mentally or physically incapacitated for the further performance of duty, that such incapacity is likely to be permanent, and that such member should be retired. No beneficiary entitled to an accidental disability retirement allowance shall receive any allowance on account of ordinary disability.

Sec. 20–22.1. Accidental disability presumption.

(a) Commencing as of July 1, 1980, and subject to the provisions of subsections (b) and (c) hereof, any condition or impairment of health of any sworn personnel in the police or fire departments, who is a member of the employee's retirement system of Baltimore County caused by lung diseases, heart diseases, or hypertension resulting in permanent physical disability, which shall prevent the member from engaging in the scope of employment consistent with his normal previous duties, shall be presumed to have been suffered in the course of and arising from his employment; and such member shall be subject to retirement under the provisions of this Code relating to accidental disability retirement.

(b) Sworn personnel in the police department shall have successfully passed a physical examination upon entering into service as a police officer which failed to reveal any evidence of such condition or impairment of health as described herein.

(c) In the case of sworn personnel in the fire department as of July 1, 1980, who successfully pass a physical examination between July 1 and August 16, 1980, which fails to reveal any evidence of such condition or impairment of health or those sworn personnel entering the fire department after July 1, 1980, and successfully passing a physical examination which fails to reveal any evidence of such condition or impairment of health, the presumption established may be rebutted only by clear and convincing evidence to the contrary.

The importance of these accidental disability provisions lies in the fact that one retired under them is entitled to an allowance equivalent to 66⅔% of his or her final average compensation, as opposed to the maximum 50% allowance for those who retire under ordinary disability. Baltimore County Code §§ 20–23(a)(2); 20–21(b). Appellees Charles Penn and Wayne Henninger sought and obtained the generous accidental disability benefits under the following circumstances:

Penn was a lieutenant and Henninger a sergeant in the Baltimore County Police Department. On April 15, 1982, following an internal investigation, both were charged with numerous violations of departmental rules and regulations. Soon after that both men called in sick. They were placed on sick leave status. Because of their conditions the disciplinary proceedings against them were never scheduled for hearing and, therefore, never terminated either adversely or favorably to them. On February 1, 1983, Penn and Henninger applied for accidental disability pensions, based on hypertension.

The medical board certified to the board of trustees that both men suffered from hypertension and because of that were permanently incapacitated from the performance of their regular duties as police officers. Those findings are not contested on this appeal. The trustees, nevertheless, denied accidental disability benefits, awarding only the lesser ordinary disability benefits. Penn and Henninger appeal-

ed to the board of appeals. At a *de novo* hearing, that body considered the record made before the trustees, as well as medical reports and portions of the internal investigation report. On August 24, 1984, the board of appeals reversed the trustees and authorized accidental disability retirement for Penn and Henninger. Baltimore County's appeal to the circuit court resulted in affirmance of the Board of Appeal's decision.

Before us, the County asks:

1. Was the trial court correct in its interpretation of the statutory presumption found in § 20–22.1(a)?

2. Did the trial court commit error in ruling that Penn and Henninger were entitled to accidental disability benefits?

3. Did the trial court and the Board of Appeals have jurisdiction over the appeal from the Board of Trustees?

Because the third question presents a threshold issue, we shall address it first. It will not detain us long.

### *Jurisdiction*

Section 602 of the Baltimore County Charter deals with powers and functions of the Board of Appeals. Subsection (a) pertains to appeals from orders relating to zoning, as does subsection (e). Subsection (b) covers appeals from orders relating to licenses and subsection (c) with appeals from orders relating to building. Subsection (d) provides:

> The county board of appeals shall hear and decide appeals from all other administrative and adjudicatory orders as may from time to time be provided by Article 25A of the Annotated Code of Maryland ... or by legislative act of the county council not inconsistent herewith.

There is no other pertinent "legislative act of the county council...." Maryland Code, Article 25A, § 5(U), however, allows a charter county to authorize the county board of appeals to hear and decide appeals regarding the following matters:

An application for a zoning variation or exception or amendment of a zoning ordinance map; the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order; and the assessment of any special benefit tax.

Baltimore County argues that because neither of these provisions expressly refers to personnel matters or to retirement benefits, the board of appeals lacked jurisdiction to hear the appeal from the trustees. If that is so, it avers, the circuit court also lacked jurisdiction to hear the appeal to it.

We do not read § 5(U) as the County does. As we see it, it deals with a broad variety of zoning matters, a broad variety of license and permit matters, special benefit taxes, and adjudicatory orders of any type. To eliminate "adjudicatory orders" as a separate category would be to fail to give effect to some of the legislative language, an improper approach to statutory construction. *See State v. Fabritz,* 276 Md. 416, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942, 96 S.Ct. 1680, 48 L.Ed.2d 185 (1976).

Section 602(d) reflects that reading of § 5(U). *See Hope v. Baltimore County,* 288 Md. 656, 663, 421 A.2d 576 (1980) in which the Court of Appeals, although in the context of a subdivision plat appeal, suggested that § 602(d) refers to all adjudicatory and administrative orders. Thus, if the board of trustees' decision was an "adjudicatory order" it was appealable to the board of appeals and thence to the circuit court.

 We have no doubt that the trustees' decision was an "adjudicatory order." In our view an adjudicatory order is one that decides what the Administrative Procedure Act defines as a "contested case"—an agency proceeding that involves "a right, duty, statutory entitlement, or privilege of a person...." State Govt. Art. § 10–201(c)(1). *See Donocam Associates v. Washington Suburban Sanitary*

*Commission,* 302 Md. 501, 489 A.2d 26 (1985). Certainly Penn's and Henninger's "statutory entitlement" to pensions, or to some level of pension, was involved here. And the trustees decided that question of statutory entitlement after a hearing at which counsel for both sides were present and evidence was reviewed. It was not legislating; it was not rule-making; it was adjudicating two specific claims for statutory entitlement. Its decision was an adjudicatory order. Judge Sfekas did not err when he rejected Baltimore County's jurisdictional argument.

### The Section 20–22.1 Presumption

The presumption upon which we now focus is found in § 20–22.1(a). So far as this case is concerned, that subsection provides that a police officer whose (1) health is impaired because of hypertension, and who has because of that impairment, (2) a "permanent physical disability" which prevents the officer (3) "from engaging in the scope of employment consistent with his normal previous duties, [4] *shall be presumed to have ... suffered [that impairment] in the course of and arising from his employment "* and is "subject to" accidental disability retirement [emphasis supplied]. No one contends that conditions (1), (2), and (3) were not met. The dispute is over the nature of the presumption and how it should be applied. Baltimore County insists that it is a Thayer-Wigmore presumption.

> The Thayer-Wigmore tradition shifts to the party against whom the presumption operates [here, the County] *only* the burden of producing evidence and *not the ultimate burden of persuasion.* Under that type of presumption, only the burden of going forward is dissipated (the bubble bursts), whenever the evidence to the contrary is sufficient to generate a genuine jury issue.

*Montgomery County Fire Board v. Fisher,* 53 Md.App. 435, 446, 454 A.2d 394, *aff'd.* 298 Md. 245, 468 A.2d 625 (1983) [emphasis in original]. Once the bubble has burst, the presumption no longer has any effect.

Penn and Henninger, on the contrary, are convinced that the presumption is of the Morgan type.

> [A] presumption in the Morgan tradition, may shift the ultimate burden of persuasion, as well as the burden of producing evidence. Such a presumption does not disappear like the bursting bubble ... rather, it remains in the case as one of the elements to be considered in determining whether [the party who has the burden of ultimate persuasion has met it].

*Id.* To perceive the critical nature of these conflicting contentions on the outcome of this case, we must refer to the proceedings before the board of appeals.

All evidence was presented to the board by way of stipulation. That evidence consisted of the record before the board of trustees, a number of medical reports, and extensive documents stemming from the internal investigation of Penn and Henninger. As to these last, it was further stipulated that Penn and Henninger denied the truth of much of the material contained in the investigation reports. They agreed, however, that that information formed the basis for the disciplinary charges lodged against them.

In argument before the board, the County asserted that the hypertension problems concededly present in both Penn and Henninger really began to manifest themselves about the time the investigation commenced and became worse when the charges were filed.[1] Because "being under investigation, having charges, are not normal police activities ... they are duties outside of normal duties" the County posited that the ailments "did not arise from a history of police work that produced a gradual onset" and could not have been suffered in line of duty (in the course of employment). Consistent with its Thayer-Wigmore theory, it concluded

---

1. The County has changed its mind about this. As we shall later see, it now argues to us that "the filing of disciplinary charges, and not the investigation that preceded it, was the 'single injury producing event or happening' that resulted in the Appellees becoming disabled."

that the bubble had been burst and that the presumption no longer operated in favor of the officers.

The board saw it differently. After reviewing the evidence before it, including that relating to the investigation, it observed that a finding of guilt on the charges against Penn and Henninger "may have provided the basis for a determination that notwithstanding the presumption of accidental disability such disability would not be 'without wilful negligence' on the part of these employees and thus would not meet the standard stated in Section 20–22 of the Baltimore County Code." But, as the board pointed out, there was no finding of guilt, and under Baltimore County Police Department Rule 10, § 7, an officer charged with a departmental offense is presumed innocent until proven otherwise.

The board went on to find that an internal investigation "is an inescapable part of a police officer's job" and hypertension produced by such an investigation might well be considered to be incurred in line of duty. It concluded that "the presumption to which [Penn and Henninger] are entitled under Section 20–22.1 has not been rebutted by evidence to the contrary presented by the County." It, therefore, reversed the trustees.

The board of appeals did not, of course, state expressly that it was applying a Morgan presumption to the case before it. Neither did the Workmen's Compensation Commission in *Fisher*. Despite the County's argument to the contrary, however, this does not mean that the board rejected the Morgan approach. Indeed, it is clear that the board effectively applied a Morgan presumption. Instead of deciding the presumption was no longer operative when contrary evidence came in (the Thayer-Wigmore view), it continued to consider the presumption and found that it had "not been rebutted by evidence to the contrary presented by the County." In short, it treated the presumption as affirmative evidence throughout the case. That is classic Morgan. We must, therefore, decide whether, as Judge

Sfekas held when the case reached him, § 20–22.1 establishes a Morgan presumption.

The County advances essentially two arguments in opposition to this result. One is that the statutory language, because it treats police officers differently from firefighters, provides a Morgan presumption for the latter but not for the former. *Compare* § 20–22.1(a) with § 20–22.1(c). The other is that Judge Sfekas was wrong in following *Fisher, supra.*

■ So far as we can tell from the record, the first argument was not raised either before the board of appeals or before the circuit court. In his well-reasoned and comprehensive opinion, Judge Sfekas makes no mention of it. While we think the argument, in any case, lacks merit, we hold that it is not before us. Md.Rule 1085. We turn, then, to *Fisher.*

■ *Fisher* was a workers' compensation case. It involved Art. 101, § 64A(a)(1) which, like § 20–22.1, applies to both police officers and firefighters. The former provides:

> Any condition or impairment of health of any paid municipal, county, State, airport authority or fire control district, fire fighter ... caused by lung diseases, heart diseases, or hypertension, and any condition or impairment of health of any paid State, municipal, Maryland-National Capital Park and Planning Commission, county or airport authority police officer caused by heart diseases or hypertension resulting in total or partial disability or death shall be presumed to be compensable under this article and to have been suffered in the line of duty and as a result of his employment.

Both this court and the Court of Appeals held that the quoted language established a Morgan-type presumption which, as the Court of Appeals put it, imposes "a formidable burden on the party against whom it operates." *Fisher,* 298 Md. at 257, 454 A.2d 394. It reasoned that the legislature intended to establish a Morgan presumption in § 64A(a) because of "a social policy affording preferential

treatment to firefighters disabled by heart disease." *Id.* Of course, § 64A(a) reflects a similar social policy with respect to police officers.

Judge Sfekas applied that reasoning to the case at bar. He explained:

> [I]n cases involving permanent disability governed by Section 20–22.1 the presumption that the disability is work-related operates in favor of the employee and can be rebutted by the employer only after the employer has introduced evidence which clearly and convincingly establishes that the disability is the result of some source other than employment as a county police officer or fire fighter. To hold otherwise would undercut a strong social policy affording preferential treatment to police officers and fire fighters disabled by illnesses extremely common in their professions. No doubt the county legislators had this in mind when they enacted Section 20–22.1.

He then proceeded to discuss and apply the holding of *Fisher*.

In response to this reasoning, Baltimore County asserts that Judge Sfekas discerned legislative intent in the absence of any evidence of legislative history—history which it says is non-existent. But when a statute is clear and unambiguous on its face, no resort to legislative history is required. *Maryland-National Capital Park and Planning Commission v. Rockville,* 272 Md. 550, 325 A.2d 748 (1974). Section 20–22.1 by its very language manifests an intention to afford preferential treatment to police officers and firefighters; that is clearly its sole purpose, and an important means to achieve that purpose is the use of a Morgan presumption. *Fisher,* 298 Md. at 257–59, 454 A.2d 394. This court and the Court of Appeals had no difficulty in reaching a similar conclusion in *Fisher,* despite the absence of legislative history in that case.

The County also tells us that *Fisher* is distinguishable because of "the sweeping nature of the determination of compensability that was involved." It argues that

"[a]bsent the treatment of the presumption of compensability as a 'Morgan' presumption, claimants would perhaps be entitled to no compensation at all where the employer produced some evidence that the onset of the disabling condition was due to sources other than employment factors." It sees this case as quite different because "the presumption in § 20–22.1 only means the difference of 16⅔% between ... ordinary disability benefits and ... accidental disability benefits...."

We view it otherwise. The difference between half-pay retirement and two-thirds pay retirement is far from trivial from the viewpoint of the retiree. Moreover, it was the local legislative body that decided to apply the presumption for the patent "social policy" reasons we touched on earlier. *Fisher* does not hold that a Morgan presumption operates only in major cases; it holds that such a presumption applies when the legislature intended to apply it, and that intent is plain here. Judge Sfekas did not err in his presumption analysis.

### *Error in Review of Board of Appeals Decision*

The last arguments the County has briefed contend that Judge Sfekas erred in his review of the board's fact-finding and in his rejection of the applicability of the "wilful negligence" provision of § 20–22.

The fact-oriented portion of this argument essentially charges that the board erred in its factual determination. As Judge Sfekas correctly recognized, the scope of judicial review of administrative agency fact-finding is very narrow. If there was evidence before the board from which a reasoning mind might have reached the conclusion the board did, a court will not substitute its judgment for the board's. *Commissioner v. Cason*, 34 Md.App. 487, 508, 368 A.2d 1067, *cert. denied*, 280 Md. 728 (1977). With that in mind we review the County's argument.

The County begins by claiming that the board erred in stating that there was "no evidence to the contrary provid-

ed at the hearing to rebut" the § 20–22.1 presumption. It goes on to list medical evidence to the effect that Henninger, at least, had some hypertension problems before the beginning of the internal investigation. It thinks this evidence shows that these hypertension problems were caused by weight, not job-related stress. It makes a similar argument as to Penn, although with less support from the medical records. It concludes that all of this evidence was sufficient to show that the hypertension was not job-related.

■ If the board made the "no evidence" finding attributed to it, this might have been because at the board hearing the County vigorously insisted that neither Penn nor Henninger had manifested hypertension symptoms prior to the investigation. But we read the language quoted by the County as meaning that there was no significant evidence to rebut the presumption. This is a fair interpretation of the medical reports, some of which indicated that the hypertension had been incurred in line of duty, and otherwise supported the positions of Penn and Henninger. That the board did consider all the evidence is apparent from, among other things, its statement "that the presumption to which [Penn and Henninger] are entitled under Section 20–22.1 has not been rebutted by evidence to the contrary presented by the County." What the County refuses to do now is to recognize that the presumption remained in the case as affirmative evidence in support of Penn's and Henninger's claims for accidental disability pensions. It could be, and obviously was, weighed against the other evidence. The weight to give various pieces of evidence, including the presumption, was for the board. *Fisher,* 298 Md. at 259–60, 454 A.2d 394. Judge Sfekas opined: "This Court cannot say that the Board improperly concluded that the evidence put forth by the County was insufficient to persuade it that [Penn's and Henninger's] disability was [not] work-related." We cannot say that Judge Sfekas erred.

As to the "wilful negligence" issue, the County now asserts, contrary to the position it took before the board

(and before the trustees), that the crucial event in producing the hypertension was the filing of charges, not the investigation. This, it says, was tantamount to an "accident"—a single event as opposed to a disease that develops over time. Because, in the County's view, the disabling hypertension was caused by an accident, it invokes the language of § 20–22, which prohibits accidental disability benefits if the accident has been the result of "wilful negligence" on the employee's part. The County goes on to contend that the misconduct of which Penn and Henninger were accused was the equivalent of "wilful negligence." This produced the charges that in turn produced the hypertension; hence, no accidental disability allowance.

■ Judge Sfekas held § 20–22 inapplicable, a holding precisely in accord with the position the County had taken before the trustees. He explained:

> The Court reads Section 20–22 as preventing an award of accidental benefits only when the employee has suffered permanent disability as a direct result of an 'accident' caused by the claimant's own recklessness. In this context, the word accident refers to a single, injury-producing event or happening, not a continuous pattern of behavior in violation of established department rules. . . . [A]n internal affairs investigation is not the type of event contemplated by Section 20–22. The Board of Appeals acted properly in not finding the investigation of [Penn and Henninger] as calling Section 20–22 into play.

We agree. Moreover, there was evidence before the board (including the presumption) that permitted a finding that job-related hypertension had occurred in both Penn and Henninger prior to the lodging of the charges against them and that the filing of the charges (itself a job-related action) merely exacerbated the pre-existing condition.

In the course of this opinion, we have noted several changes in the County's position as it pursued this case through its various administrative and judicial meanderings. Those switches illustrate the County's rather desperate, and

to date unsuccessful, efforts to find some legal way of avoiding the impact of a law that, under the circumstances of this case, it perceives as unwise. At oral argument the County urged on us the folly of the law, as applied, by suggesting serious adverse consequences to the police department and to the County. None of that information is in the record, of course, but if it were, it would make no difference. As Judge Smith pointed out in *State v. Wyand*, 304 Md. 721, 726, 501 A.2d 43, "[C]ourts do not pass upon the wisdom of statutes nor approve or disapprove of them." We simply construe them and, if they are constitutional, apply them. If the Baltimore County Council thinks § 20–22.1 is unwise, it may repeal or amend it. We can do neither.

JUDGMENT AFFIRMED. APPELLANT TO PAY THE COSTS.