964 A.2d 733

**James H. THOMAS**

v.

**The STATE RETIREMENT AND PENSION SYSTEM OF MARYLAND.**

**No. 2853, Sept. Term, 2007.**

Court of Special Appeals of Maryland.

Feb. 5, 2009.

Michael Marshall (Schlachman, Belsky & Weiner, PA, on brief), Baltimore, for Appellant.

Jill R. Leiner (Douglas F. Gansler, Atty. Gen., on brief), for Appellee.

Panel: HOLLANDER, MEREDITH and CHARLES E. MOYLAN, JR., (Retired, Specially Assigned), JJ.

MEREDITH, J.

Appellant, James H. Thomas, formerly worked for the Maryland State Police ("MSP"). In response to Thomas's failure to properly perform his duties, the MSP initiated disciplinary proceedings against him in 2001. As a result, Thomas sank into a state of depression that worsened over time and eventually led him to retire due to disability in 2003.

The State Retirement and Pension System of Maryland ("SRPS"), appellee, permitted Thomas to take a disability retirement and receive normal disability benefits. But, Thomas also sought enhanced "special disability benefits" because he alleged that his disabling depression was attributable to his duties with the MSP. In order to qualify for special disability benefits, the retiree must show that he is "totally and permanently incapacitated for duty arising out of or in the course of the actual performance of duty *without willful negligence by the [retiree] . . . .*" Maryland Code (1993, 2004 Repl.Vol.), State Personnel and Pensions Article ("SPP"), § 29–111(b)(1) (emphasis added). After several administrative hearings, SRPS denied Thomas's application for special disability benefits.

The SRPS ruled that Thomas's willful misconduct was clearly a contributing factor that led to his depression, and denied his claim for special disability benefits because he had not proved that his condition arose "without willful negligence" on his part, as required by SPP § 29–111(b)(1).

Thomas petitioned for judicial review in the Circuit Court for Baltimore City, which determined that there was substantial evidence to support the agency's ruling and affirmed the decision of the SRPS. Thomas then appealed to this Court, and asserts that the SRPS erred in ruling that the disability arose from his own willful negligence. We agree with the circuit court's decision to affirm the ruling of the SRPS.

## FACTS AND PROCEDURAL HISTORY

Thomas began working as a State trooper for the Maryland State Police in 1971. After he suffered a series of panic attacks while on the road from 1978 to 1980, he was transferred to the MSP's Automotive Safety Enforcement Division ("ASED"), after which the panic attacks ceased. Within the ASED, Thomas's job was to audit Maryland's authorized vehicle inspection stations.

In January 2000, the MSP issued Special Order 23–001, which established new, uniform ASED procedures for the auditing of vehicle inspection stations. It is undisputed that Thomas was aware of the new procedures and failed to comply with them. After his superiors discovered that Thomas was not conducting thorough audits and that he was submitting false reports regarding his audits, the MSP initiated disciplinary proceedings against him by serving Thomas with an official Notification of Complaint on March 13, 2001.

The receipt of the Notification caused Thomas to experience feelings of depression, anxiety, anger, and agitation, interfering with his job performance. Accordingly, the MSP referred Thomas to Caren DeBernardo, Psy.D., H.S.P.P., a licensed psychologist, for treatment. Thomas had his first therapy visit with Dr. DeBernardo on September 6, 2001. Dr. DeBernardo later testified that, at this first meeting, Thomas was

"feeling depressed. He was upset about the situation at work and that he had been reprimanded and was feeling anxious and agitated at the time." Dr. DeBernardo noted that Thomas "basically was productive and working well up until" the time he came in for treatment.

In October 2001, Thomas and his counsel purportedly negotiated a settlement agreement with the MSP, according to which Thomas would receive a thirty-day suspension without pay but remain in ASED. The parties dispute how firmly MSP committed to this settlement agreement. But the MSP informed Thomas in November 2001 that there would be no settlement, and that the charges against him would be adjudicated. Thomas contends that when the MSP reneged on the settlement agreement, that traumatic incident exacerbated his pre-existing depression, insomnia, anger, and obsession over the disciplinary proceedings against him. As a result of Thomas's condition progressing to a more serious depressive disorder, Thomas stopped working and went on sick leave at the end of November 2001, and he never returned to active duty. In January 2002, Bruce Leopold, M.D., a psychiatrist, diagnosed Thomas with a Major Depressive Illness.

On March 1, 2002, the MSP Administrative Hearing Board found Thomas guilty of neglect of duty, submitting inaccurate reports, and submitting false reports. The Hearing Board recommended a combined sanction of sixty days of suspension without pay, a one-year demotion from Trooper First Class to Trooper, and transfer out of ASED. Following the adjudication, Thomas's condition further deteriorated, and, in October 2002, Daniel C. Gutkir, Ph.D., diagnosed Thomas with Major Depressive Disorder.

The Superintendent of the MSP adopted the Hearing Board's findings and sanctions. Thomas petitioned for judicial review in the Circuit Court for Anne Arundel County. In January 2003, the circuit court remanded the case for additional fact-finding in relation to the sanctions. Pursuant to additional findings by the Board, the MSP again imposed the same sanctions.

On April 15, 2003, Thomas applied to the SRPS for special disability retirement benefits, as opposed to the less generous ordinary disability retirement benefits. In order for a retired member of the SRPS to be eligible for ordinary disability benefits, the Medical Board must certify that he "is mentally or physically incapacitated for the further performance of the normal duties of the member's position." SPP § 29–105(2)(i). To qualify for special disability benefits, an MSP retiree must be "totally and permanently incapacitated for duty arising out of or in the course of the actual performance of duty without willful negligence by the member." SPP § 29–111(b)(1).

On June 26, 2003, the SRPS Medical Board recommended approving ordinary disability benefits but denying special disability benefits, on the ground that Thomas's disability did not arise out of or in the course of the actual performance of duty. In response to Thomas's request for reconsideration, the Medical Board affirmed its previous recommendation, which the SRPS accepted on July 22, 2003. On August 4, 2003, Thomas again requested reconsideration.

Sometime in 2003, Dr. DeBernardo's diagnosis changed to Major Depressive Disorder, due to Thomas's worsening symptoms. In a letter dated October 23, 2003, to Thomas's attorney, Dr. DeBernardo summarized the progression of Thomas's symptoms, and stated: "[Thomas] reported that these symptoms began immediately following charges brought against him by his employer—the Maryland State Police." Dr. DeBernardo's letter of October 23, 2003, continued:

Mr. Thomas was initially diagnosed with Adjustment Disorder with Depressed and Anxious Mood. (309.28). However, since symptoms worsened over time and continued for over two years, his diagnosis was changed to Major Depressive Disorder (296.23).

\* \* \*

Prior to the allegations of misconduct, there was no reason to believe that Mr. Thomas would not continue to be an effective employee. In addition, his depression began immediately following the allegations and worsened with the

increased stress associated with the disciplinary actions, hearing, appeal, and pending retirement.

Thomas retired on November 1, 2003. The next year, on August 5, 2004, the Medical Board reaffirmed its recommendation that Thomas receive ordinary disability benefits, which recommendation the SRPS adopted on August 17, 2004.

On September 8, 2004, Thomas appealed to the Office of Administrative Hearings ("OAH"). Both Thomas and the SRPS filed motions for summary judgment. On November 2, 2005, the presiding Administrative Law Judge ("ALJ"), Gus Avery, issued a proposed decision, ruling that Thomas's medical condition did arise out of the performance of duty—namely, participation in the disciplinary procedure against him—but that it resulted from his willful negligence in failing to comply with the new ASED procedures. Accordingly, ALJ Avery recommended that the SRPS deny Thomas's claim for special disability benefits under SPP § 29–111(b)(1). Thomas noted exceptions to the proposed decision.

On February 21, 2006, the SRPS held an exceptions hearing. On March 21, 2006, SRPS remanded the case to the OAH for an ALJ to conduct "a full evidentiary hearing." The order for remand instructed the ALJ to answer the following question:

> Did the Claimant's depression disorder with anxiety, for which he has been determined to be totally and permanently incapacitated for duty, arise out of or in the course of the actual performance of duty without willful negligence by the claimant?

In addition, the Board asked that the ALJ "make findings of fact on the issue of willful negligence and whether the Claimant is free from willful negligence with respect to work-related event(s) or activity which the Claimant argues is the cause of his permanent psychiatric disability."

On August 9, 2006, ALJ Stephen Nichols conducted the remand hearing. Among the witnesses who testified at the administrative hearing on August 9, 2006, was Thomas's psychologist, Dr. DeBernardo, who testified as an expert in the

field of psychology and psychotherapy. Describing her first day of treating Thomas, she testified: "Mr. Thomas presented feeling depressed. He was upset about the situation at work and that he had been reprimanded and was feeling anxious and agitated at the time." When asked if she had "an opinion as to the root or the cause of" Thomas's major depressive disorder, she testified: "Well my opinion would be that he was feeling depressed and upset and his symptoms manifested immediately following the disciplinary issues that were placed upon him instantly and his reaction to that."

On October 5, 2006, ALJ Nichols issued his proposed decision, portions of which were adopted in the Final Decision of the SRPS that is the subject of this appeal. Among other findings of fact, ALJ Nichols made the following critical finding:

36. The Claimant is totally and permanently incapacitated for duty as a result of depressive disorder with anxiety. The Claimant's Major Depressive Disorder was caused by the stress he experienced as a result of the official Notification of Complaint, the MSP rescinding of the settlement of the administrative charges and the adjudication of the administrative charges by the State Police Board.

ALJ Nichols agreed with ALJ Avery's recommendation to deny Thomas's application for special disability benefits. ALJ Nichols found that the disabling condition did not occur "without willful negligence" on the part of Thomas.

ALJ Nichols summarized the events that led to charges being filed by the MSP against Thomas, including an investigation that involved a meeting between Thomas and his supervisors to review discrepancies in his inspection reports. After that meeting, Thomas's supervisors began re-inspecting his assigned stations, and turned up evidence of improper inspections and false reports. ALJ Nichols concluded: "From these facts, it is reasonable and permissible to infer that the Claimant [i.e., Thomas,] intentionally disregarded the requirements of MSP Special Order 23–0001 ... [and] was disciplined for his noncompliance." Accordingly, the ALJ concluded:

"The Claimant's incapacity for duty arose, ultimately, from his intentional disregard of the requirements of his duties."

Rejecting Thomas's argument that his willful neglect of duty was not a direct cause of his incapacitating disability, ALJ Nichols concluded:

The Claimant argues that whatever his misconduct, he did not willfully or intentionally create the mental disorder that he now suffers from. The Claimant further argues that whatever his misconduct, he was not recklessly indifferent to a risk that he would develop a mental disorder because that could not have been foreseen. In effect, the Claimant contends that although his misconduct may have been a willful disregard of the requirements of his duties resulting in the MSP disciplinary process, it was not willful or reckless as to the mental disorder he developed. The SRPS counters this argument by pointing out the simple fact that the Claimant is seeking to benefit from his own willful misconduct. The Claimant's argument is a bit too clever. The ALJ agrees with the SRPS that the phrase "without willful negligence" was intended by the Legislature to prevent an award that arises from an intentional disregard by a State trooper to the requirements of his/her duties.

Accordingly, the Claimant's incapacity for duty is not without "willful negligence" and he is not entitled to a special disability retirement allowance.

On April 17, 2007, the SRPS held another exceptions hearing and, on that same day, issued its Final Decision, in which the SRPS adopted ALJ Nichols's findings of fact and his conclusion that Thomas's willful negligence disqualified him from receiving special disability benefits. (The SRPS expressly stated that it neither adopted nor rejected ALJ Nichols's conclusion that Thomas's depression "arose out of or in the course of" his performance of duty.)

Thomas sought judicial review of the SRPS's decision in the Circuit Court for Baltimore City. Following a hearing, the circuit court affirmed the agency's decision, explaining: "I do believe that there is substantial . . . evidence in this record to

support the ALJ's findings that the Petitioner's mental illness arose from the adverse disciplinary actions pending against him, which ... were instituted because of Petitioner's willful negligence." Thomas then noted this appeal.

## DISCUSSION

■ The Court of Appeals recently summarized the principles governing appellate review of the ruling of administrative agencies as follows:

> When reviewing the decision of an administrative agency, ... we review the agency's decision directly, not the decision of the circuit court. *Anderson v. General Casualty*, 402 Md. 236, 244, 935 A.2d 746, 751 (2007). A reviewing court will affirm the decision of the [agency] when it is supported by substantial evidence appearing in the record and it is not erroneous as a matter of law. *Comptroller v. Blanton*, 390 Md. 528, 535, 890 A.2d 279, 283 (2006); *Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296, 1300–01 (1985). Because an agency's decision is presumed *prima facie* correct, we review the evidence in the light most favorable to the agency. *Comptroller v. Citicorp*, 389 Md. 156, 163, 884 A.2d 112, 116 (2005). Indeed, "it is the agency's province to resolve conflicting evidence and where inconsistent inferences can be drawn from the same evidence it is for the agency to draw the inferences." *Id.* at 163–64, 884 A.2d at 116 (quoting *Ramsay*, 302 Md. at 835, 490 A.2d at 1301). When we review an agency decision that is a mixed question of law and fact, we apply "the substantial evidence test, that is, the same standard of review [we] would apply to an agency factual finding." *Longshore v. State*, 399 Md. 486, 522 n. 8, 924 A.2d 1129, 1149 n. 8 (2007).

*Comptroller v. Science Applications*, 405 Md. 185, 192–93, 950 A.2d 766 (2008). We review an agency's statutory interpretation *de novo*. *Kushell v. Dep't of Natural Res.*, 385 Md. 563, 576, 870 A.2d 186 (2005).

■ In this case, we review the SRPS's interpretation and application of SPP Section 29–111(b)(1). Regarding questions of statutory interpretation, the Court of Appeals has said:

> The overarching rule is that, in construing statutes, "our primary goal is always 'to discern the legislative purpose, the ends to be accomplished, or the evils to be remedied by a particular provision ...'" *Barbre v. Pope,* 402 Md. 157, 172, 935 A.2d 699, 708 (2007), citing *Dep't of Health v. Kelly,* 397 Md. 399, 419–20, 918 A.2d 470, 482 (2007), and *Gen. Motors Corp. v. Seay,* 388 Md. 341, 352, 879 A.2d 1049, 1055 (2005). If the language is clear and unambiguous, we ordinarily "need not look beyond the statute's provisions and our analysis ends." *Barbre, supra,* 402 Md. at 173, 935 A.2d at 709.
>
> If, upon this preliminary analysis, however, we conclude that "the language is subject to more than one interpretation, it is ambiguous, and we resolve that ambiguity by looking to the statute's legislative history, case law, and statutory purpose." *Barbre, supra,* 402 Md. at 173, 935 A.2d at 709; *Patterson Park v. Teachers Union,* 399 Md. 174, 198, 923 A.2d 60, 74 (2007). To the extent relevant, we look as well to "the statute's structure, including the title, and how the statute relates to other laws." *Stouffer v. Pearson,* 390 Md. 36, 46, 887 A.2d 623, 629 (2005).

*Opert v. Criminal Injuries,* 403 Md. 587, 593, 943 A.2d 1229 (2008). "Further, an interpretation should be given to the statutory provisions that does not lead to absurd consequences." *Anderson v. The Gables,* 404 Md. 560, 571–72, 948 A.2d 11 (2008).

SPP § 29–111(b) states:

(b) *Eligibility.*—The Board of Trustees shall grant a special disability retirement allowance to a member if:

(1) the member is totally and permanently incapacitated for duty arising out of or in the course of the actual performance of duty without willful negligence by the member. . . .

Although the ALJ expended considerable effort in analyzing whether Thomas's disability was one "arising out of or in the course of the actual performance of duty," as required by § 29–111(b)(1), the Final Decision of the SRPS expressly avoided taking any position on whether Thomas met that aspect of the qualifying statute. The SRPS focused instead on the language in § 29–111(b)(1) that requires the retiree to establish that the incapacity is "without willful negligence by the member."

■ Upon review of the record, we agree with SRPS that there was substantial evidence to support the conclusion of ALJ Nichols that Thomas's depression arose out of not just the disciplinary proceedings against him, but also Thomas's willfully negligent auditing of the inspection stations he was assigned to review. Thomas's willfully negligent conduct led directly to the disciplinary proceedings. The disciplinary proceedings against Thomas, and the attendant emotional harm he suffered, were the natural and proximate results of Thomas's willful failure to perform his job properly and adequately. Therefore, as the ALJ and the SRPS agreed, Thomas's depression and his "incapacity for duty arose, ultimately, from his intentional disregard of the requirements of his duty." "Accordingly, [Thomas's] incapacity for duty is not without 'willful negligence' and he is not entitled to a special disability retirement allowance" under § 29–111(b).

Thomas contends that we should treat the disciplinary process against him as the sole cause of his Major Depression Disorder, wholly separate from his willfully negligent auditing. He argues that the MSP's alleged withdrawal from the negotiated settlement agreement was the origin of his incapacitating disability, noting that he had continued working until that incident. But ALJ Nichols found, to the contrary, that the origins of Thomas's depression lay in the very beginning of the disciplinary proceedings against him, and Dr. DeBernardo's testimony and her letter to Thomas's attorney, both quoted above, constituted substantial evidence supporting that finding.

Thomas cites *Baltimore County v. Penn,* 66 Md.App. 199, 503 A.2d 257 (1986), as supporting his argument that the agency must, as a matter of law, treat disciplinary proceedings as the standalone cause of any resulting mental stress inflicted upon a retiree, regardless of whether the retiree is being disciplined for his own willful negligence. But Thomas misconstrues the case. In *Penn,* this Court held that, under the Baltimore County Code, two retired county policemen were entitled to disability benefits for hypertension that may have been caused by, or exacerbated by, disciplinary proceedings against them, notwithstanding their alleged (but never proved) willful negligence. In the *Penn* case, however, the statutory disqualification for willful negligence applied only to disabilities stemming from accidents. Accordingly, we held there that the retirees' alleged willful misconduct was of no import because the disciplinary proceedings did not constitute an accident. *Id.* at 213, 503 A.2d 257. Consequently, *Penn* does not support Thomas's claim under § 29–111(b). Under the plain language of § 29–111(b), willful negligence disqualifies a retiree from receiving special disability benefits if the willful misconduct is an underlying cause of the disability.

To apply § 29–111(b)(1) as Thomas asks, by focusing on the emotional impact of the disciplinary proceedings while ignoring what led to them, would lead to an absurd result: Thomas would end up benefitting from his own willful negligence in the performance of his duty. That would be contrary to the plain language of the statute, which requires the incapacity to occur "without willful negligence by the member."

Thomas argues, alternatively, that his misconduct did not constitute the sort of willful negligence that § 29–111(b)(1) contemplates. He contends that a retiree must act with the intent to incapacitate himself (or at least with reckless indifference toward that result) in order to be disqualified under the willful negligence clause. But Thomas's interpretation is contrary to the plain words of the statute. Whether we read the disqualifying language in the statute more narrowly to say that the retiree's "actual performance of duty" must be "without willful negligence," or read the disqualifying language in

the statute more broadly to say that the retiree must be "incapacitated . . . without willful negligence by the member," Thomas would be disqualified from receiving special benefits in either event because the ALJ found that Thomas's incapacity arose from his own willfully negligent conduct in the performance of duty. There was substantial evidence to support that finding.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**