21 A.3d 1042

**James H. THOMAS**

v.

**STATE RETIREMENT AND PENSION
SYSTEM OF MARYLAND.**

**No. 51, Sept. Term, 2009.**

Court of Appeals of Maryland.

June 17, 2011.

Michael Marshall (Schlachman, Belsky & Weiner, P.A., Baltimore, MD), on brief, for petitioner.

Jill R. Leiner, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, and Deborah B. Bacharach, Asst. Atty. Gen., Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

MURPHY, J.

In the case at bar, James H. Thomas (the Petitioner), a retired Maryland State Police (MSP) officer, argues that he is entitled to receive "special disability benefits." This argument was rejected by the Board of Trustees of the State Retirement and Pension System of Maryland (the Board), Respondent. After that administrative decision was affirmed upon judicial review by the Circuit Court for Baltimore City, and by the Court of Special Appeals in *Thomas v. State Ret. & Pension Sys. Of Md.*, 184 Md.App. 240, 964 A.2d 733 (2009), the

Petitioner filed a petition for writ of certiorari in which he presented us with the following question:

Should this Court clarify whether a police department can deny an employee a special disability retirement when the employee's disability did not arise from the employee's misconduct, but rather the actions taken by the department following the misconduct?

We granted the petition. 409 Md. 44, 972 A.2d 859 (2009). For the reasons that follow, we conclude that because his incapacity arises out of his "willful negligence," the Petitioner is not entitled to special disability benefits provided by Md. Code Ann., State Pers. & Pens. ("SPP"), § 29–111(b)(1) (2004). We shall therefore affirm the judgment of the Court of Special Appeals.

## Background

The Court of Special Appeals opinion includes the following factual summary:

Thomas began working as a State trooper for the Maryland State Police in 1971. After he suffered a series of panic attacks while on the road from 1978 to 1980, he was transferred to the MSP's Automotive Safety Enforcement Division ("ASED"), after which the panic attacks ceased. Within the ASED, Thomas's job was to audit Maryland's authorized vehicle inspection stations.

In January 2000, the MSP issued Special Order 23–001, which established new, uniform ASED procedures for the auditing of vehicle inspection stations. It is undisputed that Thomas was aware of the new procedures and failed to comply with them. After his superiors discovered that Thomas was not conducting thorough audits and that he was submitting false reports regarding his audits, the MSP initiated disciplinary proceedings against him by serving Thomas with an official Notification of Complaint on March 13, 2001.

The receipt of the Notification caused Thomas to experience feelings of depression, anxiety, anger, and agitation,

interfering with his job performance. Accordingly, the MSP referred Thomas to Caren DeBernardo, Psy.D., H.S.P.P., a licensed psychologist, for treatment. Thomas had his first therapy visit with Dr. DeBernardo on September 6, 2001. Dr. DeBernardo later testified that, at this first meeting, Thomas was "feeling depressed. He was upset about the situation at work and that he had been reprimanded and was feeling anxious and agitated at the time." Dr. DeBernardo noted that Thomas "basically was productive and working well up until" the time he came in for treatment.

In October 2001, Thomas and his counsel purportedly negotiated a settlement agreement with the MSP, according to which Thomas would receive a thirty-day suspension without pay but remain in ASED. The parties dispute how firmly MSP committed to this settlement agreement. But the MSP informed Thomas in November 2001 that there would be no settlement, and that the charges against him would be adjudicated. Thomas contends that when the MSP reneged on the settlement agreement, that traumatic incident exacerbated his pre-existing depression, insomnia, anger, and obsession over the disciplinary proceedings against him. As a result of Thomas's condition progressing to a more serious depressive disorder, Thomas stopped working and went on sick leave at the end of November 2001, and he never returned to active duty. In January 2002, Bruce Leopold, M.D., a psychiatrist, diagnosed Thomas with a Major Depressive Illness.

On March 1, 2002, the MSP Administrative Hearing Board found Thomas guilty of neglect of duty, submitting inaccurate reports, and submitting false reports. The Hearing Board recommended a combined sanction of sixty days of suspension without pay, a one-year demotion from Trooper First Class to Trooper, and transfer out of ASED. Following the adjudication, Thomas's condition further deteriorated, and, in October 2002, Daniel C. Gutkir, Ph.D., diagnosed Thomas with Major Depressive Disorder.

The Superintendent of the MSP adopted the Hearing Board's findings and sanctions. Thomas petitioned for judicial review in the Circuit Court for Anne Arundel County. In January 2003, the circuit court remanded the case for additional fact-finding in relation to the sanctions. Pursuant to additional findings by the Board, the MSP again imposed the same sanctions.

On April 15, 2003, Thomas applied to the SRPS for special disability retirement benefits, as opposed to the less generous ordinary disability retirement benefits. In order for a retired member of the SRPS to be eligible for ordinary disability benefits, the Medical Board must certify that he "is mentally or physically incapacitated for the further performance of the normal duties of the member's position." SPP § 29–105(a)(2)(i). To qualify for special disability benefits, an MSP retiree must be "totally and permanently incapacitated for duty arising out of or in the course of the actual performance of duty without willful negligence by the member." SPP § 29–111(b)(1).

On June 26, 2003, the SRPS Medical Board recommended approving ordinary disability benefits but denying special disability benefits, on the ground that Thomas's disability did not arise out of or in the course of the actual performance of duty. In response to Thomas's request for reconsideration, the Medical Board affirmed its previous recommendation, which the SRPS accepted on July 22, 2003. On August 4, 2003, Thomas again requested reconsideration.

Sometime in 2003, Dr. DeBernardo's diagnosis changed to Major Depressive Disorder, due to Thomas's worsening symptoms. In a letter dated October 23, 2003, to Thomas's attorney, Dr. DeBernardo summarized the progression of Thomas's symptoms, and stated: "[Thomas] reported that these symptoms began immediately following charges brought against him by his employer—the Maryland State Police." Dr. DeBernardo's letter of October 23, 2003, continued:

Mr. Thomas was initially diagnosed with Adjustment Disorder with Depressed and Anxious Mood. (309.28).

However, since symptoms worsened over time and continued for over two years, his diagnosis was changed to Major Depressive Disorder (296.23).

\* \* \*

Prior to the allegations of misconduct, there was no reason to believe that Mr. Thomas would not continue to be an effective employee. In addition, his depression began immediately following the allegations and worsened with the increased stress associated with the disciplinary actions, hearing, appeal, and pending retirement.

Thomas retired on November 1, 2003. The next year, on August 5, 2004, the Medical Board reaffirmed its recommendation that Thomas receive ordinary disability benefits, which recommendation the SRPS adopted on August 17, 2004.

On September 8, 2004, Thomas appealed to the Office of Administrative Hearings ("OAH"). Both Thomas and the SRPS filed motions for summary judgment. On November 2, 2005, the presiding Administrative Law Judge ("ALJ"), Gus Avery, issued a proposed decision, ruling that Thomas's medical condition did arise out of the performance of duty—namely, participation in the disciplinary procedure against him—but that it resulted from his willful negligence in failing to comply with the new ASED procedures. Accordingly, ALJ Avery recommended that the SRPS deny Thomas's claim for special disability benefits under SPP § 29–111(b)(1). Thomas noted exceptions to the proposed decision.

*Thomas,* 184 Md.App. at 242–245, 964 A.2d at 733–736.

The Petitioner exercised his right to file exceptions to the ALJ's proposed decision,[1] and on February 21, 2006, the Board held an exceptions hearing. On March 21, 2006, the Board remanded the case to the Office of Administrative

---

1. Section 10–216 of the State Government Article and COMAR 22.06.06.02 provide the applicant for a disability retirement allowance with the right to file exceptions to the proposed decision, and the right to present argument to the Board.

Hearings ("OAH") for an ALJ to conduct "a full evidentiary hearing." The order for remand directed that the ALJ answer the following question:

Did the Claimant's depression disorder with anxiety for which he has been determined to be totally and permanently incapacitated for duty, arise out of or in the course of the actual performance of duty without willful negligence by the claimant?

ALJ Stephen Nichols conducted the remand hearing. On October 5, 2006 ALJ Nichols issued his proposed decision, which included the following factual findings:

7. On October 1, 1980, Thomas was transferred, at his request, from road patrol to the Automotive Safety Enforcement Division ("ASED") of the MSP. After his transfer into the ASED, the Claimant's panic attacks gradually stopped.

8. In the ASED, Thomas conducted inspections of Maryland's authorized vehicle inspection stations. When the Claimant began working in the ASED the procedures for conducting inspections of authorized vehicle inspection stations were not uniform throughout the State.

9. In January 2000, MSP Special Order 23–0001, entitled, "Monthly Inspection Station Checks," was issued that established new, uniform ASED procedures for the inspection of authorized vehicle inspection stations and for the documentation of those inspections.

10. On February 8, 2000, Thomas signed a MSP Form 42 acknowledging receipt of Special Order 23–0001.

11. Thomas was present at meetings held his supervisors to review and provide information on the new procedures.

12. On or about February 6, 2001 Thomas' immediate supervisor inspected some of the authorized vehicles inspection stations assigned to the Thomas and found that he was not following and/or documenting the new procedures in his inspections.

13. On February 8, 2001, a meeting took place at the MSP Annapolis Barracks between Thomas and his supervisors. At that meeting, his supervisors discussed with the Thomas

the discrepancies noted with his inspection and told him what he was expected to check and how to document his inspections.

14. After that meeting, Thomas's supervisors began investigating allegations that the Thomas was not conducting thorough inspections of his assigned stations and was submitting false reports. During re-inspections of the assigned stations, Thomas's supervisors noted deficiencies that had not been reported by him.

While agreeing with ALJ Avery's recommendation to deny the Petitioner's application for special disability benefits, ALJ Nichols stated:

The phrase "without willful negligence" was intended by the Legislature to prevent an award that arises from an intentional disregard by a State Trooper to the requirements of his/her duties.

The Petitioner again exercised his right to file exceptions to the proposed decision, and on April 17, 2007 the Board held another exceptions hearing. Later that day, the Board issued its final decision, in which it adopted ALJ Nichols' findings of fact and conclusion that the Petitioner's willful negligence disqualified him from receiving special disability benefits. As noted above, the Petitioner sought judicial review of the Board's decision, which was affirmed by the Circuit Court for Baltimore City and by the Court of Special Appeals.

## Discussion

The State of Maryland provides "ordinary disability" benefits to retired employees who satisfy the requirements set forth in SPP § 29–105.[2] The State of Maryland also provides

---

2. SPP § 29–105 provides:

The Board of Trustees shall grant an ordinary disability retirement allowance to a member if:

(1) the member has at least 5 years of eligibility service; and

(2) the medical board certifies that:

i. the member is mentally or physically incapacitated for the further performance of the normal duties of the member's position;

ii. the incapacity is likely to be permanent; and

"special disability" benefits to retired members of the Maryland State Police Retirement System who satisfy the requirements of SPP § 29–111(b) which, in pertinent part, provides:

(b) Eligibility.—The Board of Trustees shall grant a special disability retirement allowance to a member if:

1) the member is totally and permanently incapacitated for duty arising out of or in the course of the actual performance of duty without willful negligence by the member; and

2) The medical board certifies that:

i. the member is totally incapacitated, either mentally or physically, for the further performance of duty;

ii. the incapacity is likely to be permanent; and

iii the member should be retired.

The Petitioner argues that there are two reasons why he is entitled to disability benefits. In the words of his brief:

I. THE DEFINITIONS OF WILLFUL MISCONDUCT, WHICH OTHERWISE BARS A LINE–OF–DUTY DISABILITY DUE TO STRESS, REQUIRES SOME ACT OTHER THAN THE UNDERLYING ALLEGED MISCONDUCT WHICH RESULTED IN A POLICE DEPARTMENT'S INTERNAL INVESTIGATION.

II. THE TERM "WILLFUL NEGLIGENCE" IS INHERENTLY CONTRADICTORY AND SHOULD THEREFORE BE DEFINED AS AN ACT THAT PURPOSEFULLY INTENDS A PARTICULAR RESULT.

■ As the above quoted portion of ALJ Nichols' findings of fact make clear, there is no merit in the argument that the Board's decision to deny the Petitioner's claim for special disability benefits is not—as a matter of fact—supported by substantial evidence.[3] Substantial evidence existed in the

---

iii. the member should be retired.

**3.** Neither the Board nor the ALJs were erroneous in finding that the Petitioner's disability results from (in the words of ALJ Avery) "his

record to support the conclusion that the Petitioner willfully neglected his duties by submitting inaccurate and false reports concerning his audit of Maryland's authorized vehicle inspection stations. According to the Petitioner, however, he is entitled to special disability benefits as a matter of law. In the words of his brief:

> Willful negligence in this context is more akin to performing an act or acts that purposely bring about a disability ... An action cannot be willful unless it is intentional or purposeful and since [the Petitioner] did not act with the purpose or intention to cause his disability his actions do not statutorily bar him from recovering special disability benefits.

██ When the issue is whether an administrative agency has made an erroneous conclusion of law, the "agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts," *Marzullo v. Kahl*, 366 Md. 158, 172, 783 A.2d 169, 177 (2001). As this Court stated in *Grasslands Plantation, Inc. v. Frizz–King Enterprises, LLC*, 410 Md. 191, 978 A.2d 622 (2009):

> Our obligation is "to 'review the agency's decision in the light most favorable to the agency,' since their decisions are *prima facie* correct and carry with them the presumption of validity." *Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 569, 709 A.2d 749, 753 (1998) (citation omitted).

"Even with regard to some legal issues, a degree of deference should often be accorded the position of the administrative agency. Thus, an administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts." *Bd. of Physician Quality Assurance v. Banks*, 354 Md. 59, 69, 729 A.2d 376, 381 (1999). We are under no constraint, however, "to affirm an agency decision premised solely upon an erroneous conclu-

---

willful negligence in failing to comply with the new ASED procedures," rather than from MSP's decision to renege on the supposed settlement agreement and instead adjudicate the disciplinary proceedings.

sion of law." *Ins. Comm'r v. Engelman,* 345 Md. 402, 411, 692 A.2d 474, 479 (1997).

*Id.* at 204, 978 A.2d at 629.

There is no merit in the argument that the term "willful negligence" is "inherently contradictory." In *Foster v. Hyman,* 197 N.C. 189, 148 S.E. 36 (1929), the North Carolina Supreme Court stated:

> The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has assumed by contract, or which is imposed on the person by operation of law.' Thompson on Negligence (2 ed.), sec. 20, quoted in *Bailey v. R. R.,* 149 N.C. 169 [62 S.E. 912 (1908) ].
>
> "An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others. *Everett v. Receivers,* 121 N.C. 519, [27 S.E. 991 (1897) ]; *Bailey v. R. R., supra.* A breach of duty may be wanton and wilful while the act is yet negligent; the idea of negligence is eliminated only when the injury or damage is intentional. *Ballew v. R. R.,* 186 N.C. 704, 706 [120 S.E. 334, 335 (1923) ]."

*Id.* at 37–38.

We agree with and adopt the above quoted definition of willful negligence, which is consistent with New Jersey's statutory definition of that term. Like Maryland, New Jersey's police officers and firefighters are eligible to receive "accidental disability retirement" benefits only if their disabilities were not the result of their willful negligence.[4] The New Jersey Administrative Code defines willful negligence as:

---

4. Title 43 of the New Jersey State Code, entitled, PENSIONS AND RETIREMENT AND UNEMPLOYMENT COMPENSATION ... PENSION FUND FOR POLICEMEN AND FIREMEN; TRAFFIC OFFICERS ON COUNTRY ROADS CHAPTER 16A. POLICE AND FIREMEN'S RETIREMENT SYSTEM (N.J.Stat. § 43:16A–7), in pertinent part, provides:

Retirement for accidental disability; allowance; death benefits

1. [A] deliberate act or deliberate failure to act; or

2. Such conduct as evidences reckless indifference to safety; or

3. Intoxication, operating as the proximate cause of injury.

New Jersey Administrative Code, "TREASURY—GENERAL CHAPTER 4. POLICE AND FIREMEN'S RETIREMENT SYSTEM SUBCHAPTER 6. RETIREMENT" § 17:4–6.5 (2011).

■ We agree with ALJ Nichols that "[t]he phrase 'without willful negligence' was intended by the Legislature to prevent an award that arises from an intentional disregard by a State Trooper of the requirements of his/her duties," and with the Court of Special Appeals that, "by focusing on the emotional impact of the disciplinary proceedings while ignoring what led to them, would lead to an absurd result: [the Petitioner] would end up benefitting from his own willful negligence in the performance of his duty." 184 Md.App. at 251, 964 A.2d at 739. The Petitioner's claim for special disability benefits was properly denied by the Board, and the Board's decision was correctly affirmed upon judicial review.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY THE PETITIONER.**

---

(1) Upon the written application by a member in service, by one acting in his behalf or by his employer any member may be retired on an accidental disability retirement allowance; provided, that the medical board, after a medical examination of such member, shall certify that the member is permanently and totally disabled as a direct result of a traumatic event occurring during and as a result of the performance of his regular or assigned duties and that such disability was not the result of the member's willful negligence.