489 A.2d 26

**DONOCAM ASSOCIATES et al.**

**v.**

**WASHINGTON SUBURBAN SANITARY COMMISSION.**

**No. 77, Sept. Term, 1984.**

Court of Appeals of Maryland.

March 11, 1985.

Motion for Reconsideration Denied April 19, 1985.

502

Susan M. Reutershan, Silver Spring (Joseph P. Blocher and Linowes & Blocher, Silver Spring, on brief), for appellants.

Harry L. Durity, Hyattsville, for appellee.

Argued before MURPHY, C.J., SMITH, ELDRIDGE, COLE, RODOWSKY and COUCH, JJ., and W. ALBERT

MENCHINE, Associate Judge of the Court of Special Appeals (retired) Specially Assigned.

SMITH, Judge.

We shall here hold that a hearing held by the Washington Suburban Sanitary Commission was a "contested case" within the meaning of Maryland Code (1957, 1978 Repl.Vol., 1981 Cum.Supp.) Art. 41, § 244(d).[1] We also shall hold that the Commission improperly levied front-foot benefit charges on the land of appellants, Donocam Associates et al.

I

Just what has happened here will be better understood by reference to the plat which is appended to this opinion. Donocam Associates own parcels 5, 7, and 8. When they developed parcel 5 they constructed on-site sewer and water lines for parcels 5, 7, and 8. The sewer line stopped at the line between parcels 7 and 8. Parcel 5 was connected to the on-site system in 1977; parcel 7, in 1979, and parcel 8, in 1980. In 1980 the water line was extended to the end of parcel 8 at Rock Spring Drive. This on-site system was built entirely at the expense of Donocam, although it is said that it was built to the specifications set forth in the Commission's regulations. The system was connected to the Commission's system and regular water and sewer charges were made and paid.

In 1980 Spaulding and Slye, the owners of parcel 9, requested the Commission to provide public water and sewer to their land. It had three alternatives for supplying this request: (1) to construct water and sewer lines down Rock Spring Drive from Fernwood Road; (2) to condemn Donocam's on-site system, extending a sewer line across parcel 8 to Rock Spring Drive and then extending sewer and water lines across Rock Spring Drive to parcel 9, or (3) to acquire by negotiation Donocam's on-site system, making

---

**1.** This was recodified as Maryland Code (1984) § 10–201(c), State Government Article, effective October 1, 1984.

the extensions mentioned in (2). It is suggested that (2) and (3) presented the most direct route.

The Commission elected to follow the third alternative. At the time here relevant the Commission was empowered by Code (1957, 1978 Repl.Vol., 1981 Cum.Supp.) Art. 67, § 3–6 to acquire private or municipal water or sewerage systems.[2] This section provided:

> "Whenever said commission shall have extended its general water supply or sewerage system up to and is ready to connect with any municipally owned or privately owned water supply or sewerage system, or previously thereto if in its judgment such action is expedient, and it deems it advisable and proper for the adequate operation of the system under its jurisdiction to take over the said water or sewerage system, it may purchase the same upon such terms and conditions as may be agreed upon. In the event of failure to agree as to the purchase price or conditions of purchase of said water or sewerage system, whether privately or municipally owned, the said commission may acquire the same by condemnation, in the same manner as it is authorized to acquire land by this subtitle [of this Code]."

On June 5, 1980, the Commission and Donocam entered into an agreement by the terms of which Donocam Associates, without cost to the Commission, were to transfer this on-site water and sewer system to the Commission, and were to grant supporting easements and rights-of-way. The agreement recited that Donocam had constructed the on-site water and sewer system in question at their cost. The agreement provided in part:

> "2. ... Fourth Donocam Associates does hereby grant and convey to the Commission, and its successors and assigns, a non-exclusive easement and right-of-way, as more fully shown and defined on the plat attached hereto and made a part hereof as *Exhibit 'A'* and more particu-

---

2. This section is now codified as Code (1957, 1983 Repl.Vol.) Art. 29, § 3–106.

larly described by the metes and bounds description titled 'Fourth Donocam Associates, Owner', attached hereto as a part of *Exhibit 'B'* and incorporated by reference herein, for the purposes of installation, construction, reconstruction, maintenance, repair, operation and inspection of a sanitary sewer within said easement and right-of-way, together with the right of ingress and egress, at the Commission's own risk and sole expense, along and over said right-of-way for any and all such purposes.

*　*　*　*　*　*

"5. The Commission, by accepting the continuing maintenance and operation of said water and sewer system, shall have the authority to renew, replace, repair, reconstruct and redesign said system subsequent to the execution of this Agreement provided, however, that the Commission shall do so at its own risk and sole expense and shall be liable to the Owners, and their respective successors and assigns, for any damage done by the Commission to their respective properties. The Commission shall perform any replacements with materials of similar quality and kind, and will return easement areas disturbed to their condition prior to such reconstruction, repair or maintenance.

"6. It is understood and agreed by the parties hereto that the metering and billing procedures to the Owners for water and sewer service presently in effect or as may be modified shall continue...."

Pursuant to this agreement the Commission executed a deed of abandonment and quit claim pertaining to the rights-of-way and easements it had previously held.

The Commission then constructed a sanitary sewer across parcel 8 to serve parcel 9. This was known as Contract 80–AS4645A to which reference will be made later. Parcel 9 was served with water by extension by the Commission of the water line on parcel 8 across Rock Spring Drive.

On February 25, 1982, Donocam Associates were notified by the Commission of an assessment for a front-foot sewer

benefit charge against parcel 8 in the annual amount of $3,024.84 for a period of thirty-three years. The notice recited:

> "Maryland law requires the Washington Suburban Sanitary Commission (W.S.S.C.) to assess a front foot benefit charge (F.F.B.C.) on properties benefited by the availability of water and/or sewer service from mains constructed or acquired in 1981. The FFBC is levied to recover construction cost."

Donocam Associates were informed that a public hearing "on the property classification and footage assessed against properties" was scheduled for March 24 "to provide [them] with an opportunity to present [their] views on either the property classification or the footage assessed against [their] property."

Counsel for Donocam immediately protested the assessment on two grounds, (1) that "parcel 8 . . . does not benefit from the sewer line installed by the WSSC for which the assessment is being proposed," and (2) that by the contract between Donocam and the Commission "all the costs to construct the sewer line for which the proposed assessment is to be levied were to be paid by the WSSC and at no cost to Donocam Associates." It was pointed out that this sewer line was constructed at the request of Spaulding and Slye and that Donocam had no need for sewer services to any of their properties.

The summary prepared by the commissioner who conducted the hearing said under "Properties Benefit Condition":

"1. The property is abutted by sewer main construction under contract # 80AS4645A.

"2. The property is improved by a nine story office building.

"3. The property and its improvement receives water and sewer services based on a service connection under permit # 491535. The service connection was applied for on 12/19/79 and was completed on March 16, 1981. The service connection is hooked up to the on-site

system taken over by the Commission as covered by the agreement (attachment 5).

"4. The property's proposed assessment is based on sewer main construction under contract # 80AS4645A."

In his "Discussion of Benefit Conditions" the Commissioner said:

"1. The Assessment Section Head agrees that the basis of the proposed assessment contract # 80AS4645 did not benefit the owner's property as stated by the owner's representative.

"2. The property received a sewer benefit by virtue of a service connection constructed in 1981 under permit # 491535.

"3. The property has not been assessed a sewer benefit charge.

"4. Article 67 Section 5–1(g) of the Annotated Code of Maryland states (emphasis added)

'The Commission shall at any time permit a connection with a water main or sewer by a property [owner] whose property does not abut on said water or sewer and *who has not previously paid a benefit charge for the construction of the water main or sewer provided said Commission shall classify said property and determine a front foot benefit charge to be paid by the property owner at the rate and for the same number of years as though his property abutted upon a water main or sewer constructed in the year in which the connection is made ....*'

"5. The property is improved by a nine story office building and is classified multi-business.

"6. The footage assessed against multi-business property is all street frontages. Parcel 8 has a total of 831 ft of street frontage.

"7. The service connection was completed in March of 1981.

"8. The multi-business sewer FFBC rate for 1981 new construction is $3.64 per ft per year for 33 years.

"9. The notice of benefit charge stated, a multi-business classification, footage of 831 ft and a rate of $3.64 per ft per year for 33 years or an annual sewer FFBC of $3,024.84 per year."

The record does not contain a copy of permit number 491535 to which the commissioner referred nor does it contain any information relative to that permit. The Commission approved his recommendation that the assessment stand.

On May 14, 1982, the Commission gave notice of an assessment for water and sewer front-foot benefit charges against parcel 5 in the annual amount of $2,211.95 for thirty-five years. It recited that connection had been made in 1977. On the same date notice of an assessment against parcel 7 was given. It was in the annual amount of $1,950.73 for thirty-three years. It said connection was made in 1979. Also on the same date a charge for water front-foot benefit charge was made against parcel 8 in the annual amount of $733.50 for sixteen years. The notices were similar in all respects to the notice pertaining to parcel 8.

Donocam immediately protested all three of these assessments. A hearing was held. The commissioner who heard the matter recommended that the assessment be maintained as assessed, stating under "Benefit Assessment Condition":

"1. Parcel 5—Received non-abutting water & sewer connection; the connection was completed in 1977. The property was assessed FFBC based on Section 5–1g of the Code. In accordance with Section 5–1c, the bond years were extended for four (4) years. Since the property is classified Multi-Business it was assessed for the entire street frontage in accordance to the Assessment Manual (Chapter VII).

"2. Parcel 7—Received non-abutting water and sewer connection, the connection was completed in 1979. The property was assessed FFBC based on Section 5–1g of the Code. In accordance with Section 5–1c, the bond

years were extended for two (2) years. Since the property is classified Multi-Business it was assessed for the entire street frontage.

"3. Parcel 8—Property's original water FFBC was classified under Small Acreage due to water main abutment. Due to commercial connection, property was reclassified to Multi-Business classification, in accordance to Section 5–1a and Assessment Manual (9–2e)."

These assessments likewise were approved by the Commission.

Donocam appealed to the Circuit Court for Montgomery County. The Commission filed a motion raising preliminary objection. It said that the circuit court "lack[ed] jurisdiction over the subject matter," contending that it was not "a 'contested case' " within the purview of Art. 41, § 244(d). The trial judge (Miller, J.) ruled that "WSSC's actions are . . . subject to judicial review pursuant to Section 255 of the [Administrative Procedure Act] and this appeal is within the jurisdiction of the court." He ultimately held that "the assessment of front-foot benefit charges against the appellants where the subject property was not benefited and where that assessment is in direct violation of the WSSC's contractual promise is arbitrary and capricious." Accordingly, the assessments were declared void.

The Commission appealed to the Court of Special Appeals. In *Wash. Sub. San. Com'n v. Donocam Assoc.*, 57 Md.App. 719, 471 A.2d 1097 (1984), the intermediate appellate court held that this was not a "contested case" within the purview of Art. 41, § 244(d). Accordingly, it vacated the judgment and remanded the case to the Circuit Court for Montgomery County with directions to dismiss the appeal. We granted Donocam's petition for a writ of certiorari in order that we might address the important public issues here presented.

## II

Maryland's Administrative Procedure Act at the time here relevant was found in Code (1957, 1978 Repl.Vol., 1981

Cum.Supp.) Art. 41, §§ 244–256A.[3]   A contested case is defined in § 244(d) as "a proceeding before an agency in which the legal rights, duties, statutory entitlements, or privileges of specific parties are required by law or constitutional right to be determined after an agency hearing." The term "agency" is said in § 244(a) to be "any State board, commission, department or officer authorized by law to make rules or to adjudicate contested cases," with certain exceptions not relevant here.   The Commission is an agency. *See Prince George's Co. v. Blumberg,* 288 Md. 275, 294–95, 418 A.2d 1155, 1166 (1980), *cert. denied,* 449 U.S. 1083, 101 S.Ct. 869, 66 L.Ed.2d 808 (1981); *Katz v. Washington Sub. San. Comm'n,* 284 Md. 503, 509–12, 397 A.2d 1027, 1031–32 (1979).   Section 255(a) provides the right of judicial review to any party aggrieved by a final decision in a contested case.   Section 255(f) states:

> "*Affirmance, remand, reversal or modification of decision.*—The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions;  or
>
> (2) In excess of the statutory authority or jurisdiction of the agency;  or
>
> (3) Made upon unlawful procedure;  or
>
> (4) Affected by other error of law;  or
>
> (5) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted;  or
>
> (6) Arbitrary or capricious."

---

**3.** Now codified as Code (1984) §§ 10–201 to –217, State Government Article, effective October 1, 1984.

The assessment here was under Code (1957, 1978 Repl. Vol., 1981 Cum.Supp.) Art. 67, § 5–1.[4]  Section 5–1(a) states:

> "The construction or acquisition of water mains or sewers is ... declared to be a benefit to all property abutting upon the same and the commission, for the purpose of assessing benefits for the construction of water supply and sewerage systems, shall divide all properties binding upon a street ... or easement, in which a water pipe or sanitary sewer is to be laid, into seven classes ...."

These classes are spelled out.  The statute goes on to specify:

> "Immediately upon the commencement or within twelve months after the completion of a water supply or sewerage project the commission is empowered and directed to fix and levy a benefit charge upon all property abutting upon the water main or sewer, in accordance with the classification, and shall in writing notify all owners of the properties into which class their respective properties fall and the charge determined upon, naming also in the notice a time and place when and at which the owners will be heard."

The notice is to "be mailed to the last known address of the owner, or served in person upon any adult occupying the premises, or in the case of vacant or unimproved property, posted upon the premises."  This section specifies that the "classification of any property as made by the commission shall be final, subject only to revision at the hearing."  The Commission is empowered to change the classification of properties from time to time "as the properties change in the uses to which they are put."  The section further states:

> "The benefit charge shall be levied for both water supply and sewerage construction and shall be based for each class of property upon the approximate cost of the construction as an integral part of the whole system, and

---

**4.** Most of this section has since been recodified as Code (1957, 1983 Repl.Vol.) Art. 29, § 5–101.

either the number of front feet abutting upon the street ... or easement in which the water pipe or sewer is placed, or with respect to multi-unit classes, the number of units in or on the property abutting the water main or sewer line."

The Commission argued to us and to the Court of Special Appeals that the setting of front-foot benefit charges is a legislative action and that such action is not reviewable as a contested case. The Court of Special Appeals said, correctly in our view, "[I]t is not the underlying function involved, but rather the particular nature of the hearing required that determines whether a matter is a 'contested case.'" 57 Md.App. at 725, 471 A.2d at 1100.

It is conceded, as indeed it must be, that the statute under which these assessments were made requires a hearing. As we have already noted, the Commission is an agency within the meaning of the Administrative Procedure Act. There is no dispute relative to the fact that Donocam Associates were aggrieved—their property has had assessments placed on it which work out to in excess of one-quarter of a million dollars, enough to aggrieve any property owner. The question becomes then whether "the legal rights, duties, statutory entitlements, or privileges" of Donocam and persons similarly situated are required by law to be determined after an agency hearing.

As we see it the agency is to determine rights and duties at this hearing. Donocam Associates point out, correctly, that after a hearing on the same day as the hearing pertaining to the sewer assessment for parcel 8 it was recommended that the Commission cancel the front-foot benefit assessment for another property owner. The reason given was that the "[p]roperty [was] assessed for non-abutting connection in error." In other words, the Commission itself has treated hearings mandated by Art. 67, § 5-1 as being an opportunity for a property owner to show that in fact no assessment should be placed against his property. Although the Commission did not agree with

the arguments presented by Donocam, in each instance it noted Donocam's contention that no assessment should be placed against the parcels in question. What is the purpose of the hearing? Surely it must be something more than an opportunity for a property owner to cry out in rage and frustration at what he may regard as unreasonably high costs. We believe it to be an opportunity for a property owner to present his contentions and to have a ruling relative to the correctness of an assessment. His contentions may rest on several grounds. He may contend, as obviously one other property owner in addition to Donocam did, that no assessment should be made. The statute provides for property to be placed in certain classifications. Certainly this hearing would be an opportunity for a property owner to bring to the attention of constituted authority that an error had been made in classification. It likewise would be an opportunity for him to suggest that a mathematical error had been made. We believe that all of these various possibilities, including, specifically, the right to contend that *any* assessment is erroneous, give rise to a determination by the agency of the rights and duties of property owners. Hence, we conclude that the proceedings before the Commission were a "contested case" and that the Court of Special Appeals erred in directing dismissal of the appeal.

### III

█ It will be recalled that the Commission in its determinations relied in each instance upon Art. 67, § 5–1(g) pertaining to nonabutting property in concluding that the assessments here were properly made.[5] The pertinent portion of that section has been set forth previously in our quotation from the commissioner who conducted one hearing. Subsection (g) can in no way be applicable to the properties here involved because they are not "nonabutting property."

---

5. This section is now codified as Code (1957, 1983 Repl.Vol.) Art. 29, § 5–104(a).

The sewer and water lines go through them as will be seen by reference to the attached plat.

As we have previously indicated, § 5–1(a), upon which these assessments must rest if they are to be sustained, provides in pertinent part, "The construction or acquisition of water mains or sewers is ... declared to be a benefit to all property abutting upon the same ...." It will be recalled that with reference to the parcel 8 sewer assessment the reason given for the assessment by the commissioner who conducted the hearing was the construction of the line to parcel 9. Yet he noted, "The Assessment Section Head agrees that the basis of the proposed assessment contract # 80AS4645 did not benefit the owner's property as stated by the owner's representative." It will be noted that in the Commission's action in each instance it referred to the date of connections. In each instance these were the dates when Donocam connected the buildings on the various parcels with Donocam's then privately owned system. The benefit charge is to be "upon the approximate cost of the construction as an integral part of the whole system ...." There has been no attempt here by the Commission to spell out other system costs which might be included "as an integral part of the whole system" but it has elected to treat these properties as though this were new construction or an acquisition for which the Commission paid. There was no construction here. There was no cost to the Commission for the acquisition. Donocam *gave* the Commission the on-site sewer and water lines. The Commission in effect wishes Donocam to pay twice for this system, its original cost plus a second time by assessment. It would be anomalous, to put it mildly, to permit the Commission to assess Donocam for the cost of this on-site system for which the Commission paid nothing and which was built at the expense of Donocam. We think the trial court correctly categorized the front-foot benefit charges in question as "arbitrary and capricious."

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT

FOR PASSAGE OF AN ORDER AFFIRMING THE JUDG-
MENT OF THE CIRCUIT COURT FOR MONTGOMERY
COUNTY; RESPONDENT TO PAY THE COSTS.