*Washington Suburban Sanitary Commission v. Lafarge North America, Inc.*,
No. 69, September Term, 2014

**PUBLIC UTILITIES – WASHINGTON SUBURBAN SANITARY COMMISSION
– REFUND CLAIMS – DENIAL BY OPERATION OF LAW FOR FAILURE TO
RENDER A TIMELY DECISION – JUDICIAL REVIEW**

If the Washington Suburban Sanitary Commission ("WSSC") fails to decide a refund
claim within 180 days, the claim is deemed denied, pursuant to Maryland Code (1998,
2010 Repl. Vol.), Public Utilities Article, § 25-106(d). A reviewing court is authorized to
reverse the decision of the WSSC (assuming that the denial was not supported by
substantial evidence and/or was arbitrary and capricious on the record) and remand the
case to the WSSC with directions to calculate and issue the appropriate refund, thus
foreclosing the agency's ability to consider anew on remand the potential for denial of the
refund request.

Circuit Court for Montgomery County
Case Nos. 369284 & 370064
Argued: 1 April 2015

IN THE COURT OF APPEALS OF
MARYLAND

No. 69

September Term, 2014

---

WASHINGTON SUBURBAN
SANITARY COMMISSION

v.

LAFARGE NORTH AMERICA, INC.

---

Barbera, C.J.,
Harrell,
Battaglia,
Greene,
Adkins,
McDonald,
Watts,

JJ.

---

Opinion by Harrell, J.

---

Filed: June 18, 2015

Lafarge North America, Inc. ("Lafarge") operated a ready-mix concrete plant in Rockville, Maryland, during the time relevant to this case. It sought a refund from the Washington Suburban Sanitary Commission ("WSSC") for allegedly erroneously assessed and paid water and sewer service charges for the operation of the plant. Lafarge sought initially from the WSSC administrative review and action on its refund request from the WSSC. The WSSC did not hold a hearing or decide the refund request within 180 days of its filing, as it was obliged to do by Maryland Code (1998, 2010 Repl. Vol.), Public Utilities Article, § 25-106 ("PUA"). The same statutory scheme decreed that the refund request was deemed denied by operation of law because of the WSSC's failure to render a timely decision. PUA § 25-106(d)

Lafarge turned to the Circuit Court for Montgomery County for judicial review, noting that its claim was deemed denied by the WSSC's inaction. The Circuit Court concluded that the deemed denial was not supported by substantial evidence in the record and was arbitrary and capricious because the WSSC failed to act timely. As a result, that court remanded the matter to the WSSC with directions to determine and issue an appropriate refund. On direct appeal by the WSSC, a panel of the Court of Special Appeals affirmed unanimously the judgment of the Circuit Court. We granted the WSSC's petition for a writ of certiorari. For the reasons explained below, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

The WSSC operates the public water supply, sewage collection and treatment, and storm water management systems in most of Prince George's and Montgomery counties. This bi-county, state agency levies separate charges for water consumption and sewer

services, but its sewerage charges are determined by the water consumption of a user. PUA § 25-503(a). If some of the water consumed by a commercial, industrial, or multi-family residential use is "used exclusively for any purpose that results in the [consumed] water not entering the [WSSC's] sewer system[,]" however, the WSSC may not impose sewer charges for that portion of the water consumption. PUA § 25-503(d) and (e). To avoid being billed for water consumption not entering into the sewer system, a property or business owner must have a submeter installed to measure the water not discharged into the sewer. *Id.* After installation of a submeter, the WSSC calculates the sewerage bill by subtracting the water passing through the submeter from the amount of water passing through a primary meter at the site. *Id.*

The WSSC delivered large quantities of water to Lafarge's ready-mix concrete plant in Rockville. According to Lafarge's refund request, the production of concrete consumes the vast majority of the water delivered to the plant. This water is not discharged into the WSSC's sewer system. The only incoming water discharged into the public sewer system as "sewage" came from an employee bathroom on the premises. Lafarge asserted further in its refund request that the number of employees and activity levels at the plant remained the same over the past decade.

In 2000, at Lafarge's request and expense, the WSSC installed on the property a submeter to measure the water used to make concrete.[1] In August 2005, the submeter was moved elsewhere on-site after the structure housing the submeter (described by Lafarge as a "shed") was destroyed by fire. Lafarge maintained, in its refund request, that the submeter ceased working properly after the fire and relocation, resulting in sewer charges for substantial amounts of water that Lafarge's operations did not discharge into the sewer system.

An internal investigation into sewerage charges following a submeter malfunction in February of 2012 alerted Lafarge for the first time to the charges it came to believe were in error. Before the 2005 fire, the Rockville plant was billed consistently for discharging into the sewer system approximately one-tenth of the plant's total water consumption. After the fire, Lafarge was billed for a water-to-sewage ratio of between 2-to-1 and 1-to-1. Lafarge claims that such indicated sewage discharges were erroneously high. On 16 February 2012, Lafarge contacted initially the WSSC about the erroneous sewerage charges.

On 6 March 2012, Lafarge, pursuant to PUA § 25-106, submitted a letter (with attachments) to the WSSC requesting a refund for the allegedly erroneous charges.[2] On 9

---

[1]    The "record" is unclear as to whether Lafarge or a predecessor entity operated the plant before the submeter was installed. The submeter installed in 2000, however, was the first submeter at the business.

[2]    Refund claims are provided for by subsections (b) and (c) of Maryland Code (1998, 2010 Repl. Vol.), Public Utilities Article, § 25-106 ("PUA"):

(Continued…)

3

April 2012, Lafarge completed and submitted a refund hearing request form, as directed by the WSSC. The WSSC did not hold a hearing or issue a decision on Lafarge's claim within 180 days, as required by PUA § 25-106(d).[3]

Pursuant to PUA § 25-106(d) and (e), Lafarge petitioned the Circuit Court for Montgomery County for judicial review of the "deemed final rejection" of its claim.[4] The WSSC filed a motion for a stay of the proceedings until it could hold a hearing so that a fuller evidentiary record could be developed and actual final action made. The Circuit Court denied the WSSC's motion.

---

(…continued)

> (b) *Claims.* — (1) A person may file a written claim with the [WSSC] in a form and containing the information and supporting documents required by the [WSSC], for a refund of the amount of a fee or charge the person paid to the [WSSC] that exceeds the amount that is properly and legally payable.
>
> ****
>
> (c) *Investigation.* — (1) On the receipt of a claim for a refund under subsection (b) of this section, the [WSSC] shall investigate the merits of the claim.
>     (2) On the request of the claimant, the [WSSC], or the [WSSC's] designee, shall hold a hearing on the claim.

[3]     PUA § 25-106(d) states:
> *Failure to reach a final decision.* — If the [WSSC] fails to reach a final decision on a claim within 180 days after the date the claim is filed, the failure shall be deemed a final rejection of the claim.

[4]     Lafarge filed two petitions for judicial review with the Circuit Court as a protective maneuver to ensure that it would not lose its right to judicial review of either its 6 March 2012 letter requesting a refund or its 9 April 2012 request for a hearing, whichever as might be determined to be the "claim" for purposes of PUA § 25-106(d). The two petitions were consolidated by the Circuit Court.

4

The WSSC filed thereafter with the court the "agency record." The "record" consisted of, in its entirety, Lafarge's 6 March 2012 letter requesting a refund and the 9 April 2012 hearing request (both of which had supporting documents attached by Lafarge). Lafarge responded with a motion requesting that the court require the WSSC to supplement the "record" with any documents created during the agency's investigation of the claim, if any. The WSSC opposed the motion. On 8 January 2013, the Circuit Court granted Lafarge's motion. Thereafter, the WSSC provided to the Circuit Court additional documents.[5]

On 17 June 2013, the Circuit Court determined that: (1) the WSSC's deemed denial of Lafarge's claim was not supported by substantial evidence; (2) the WSSC's failure to decide the claim within the 180-day window required by PUA § 25-106(d) was arbitrary and capricious; (3) it would be inappropriate to give the WSSC a second opportunity to consider whether to deny the refund request after the agency failed to make a determination within the time-period required by the statute; and, (4) therefore, Lafarge was entitled to a refund in some appropriate amount. The court remanded the matter to the WSSC with directions to issue a refund according to the agency's standard

---

[5] The documents from the investigative file included: Lafarge's water and sewer bills from January 2006 through February 2012; a document titled "Refund Hearing Summary," prepared apparently by the WSSC staff, which set out the interactions between Lafarge and the WSSC regarding the submeter and recommended that the refund claim be denied; a spreadsheet with illustrative charts detailing water and sewerage usage and billing history for the property; and meter-reading data, notes, and work order results.

operating procedures.[6] On 20 September 2013, the Circuit Court granted Lafarge's motion to alter or amend the judgment and required additionally that the WSSC issue the refund within 30 days.[7]

On 3 July 2013, the WSSC appealed timely to the Court of Special Appeals. The WSSC did not argue to the intermediate appellate court that Lafarge was not due a refund, but rather attempted to persuade the court that the Circuit Court exceeded its powers in requiring the WSSC to supplement the "record," as submitted originally, with the agency's investigative file and by making factual determinations absent a proper agency record, agency findings, or agency conclusions. Lafarge retorted that the appellate court was not authorized expressly to consider appeals from the Circuit Court under PUA § 25-106(e).[8]

---

[6] The Circuit Court ordered the WSSC to calculate the refund owed to Lafarge according to a document entitled "Standard Procedures for Adjustment and Correction of Water/Sewer Bill, SP Number CUS 10-01." CUS 10-01 appears to be a standard and uniform method of determining refunds. Neither the WSSC nor Lafarge objected to the document's use to determine the amount of the refund owed.

[7] According to documents found in the WSSC's investigative file, WSSC staff calculated that Lafarge may have been overcharged by as much as $230,391.81. Lafarge claims that the refund should be larger substantially, but the adequacy of the amount of a refund has not been litigated and is not an issue before us at this time.

[8] PUA § 25-106(e) states:
> *Judicial review.* — Within 30 days after the date of final action by the [WSSC] on a claim for a refund filed under subsection (b) of this section, a petition for judicial review may be filed with the circuit court as provided in Title 7, Chapter 200 of the Maryland Rules.

A panel of the Court of Special Appeals, in an unreported opinion, examined the legislative history of PUA §25-106(e) and held that the Legislature intended to allow further appeals to the Court of Special Appeals from judgments by a circuit court, after judicial review of PUA § 25-106 refund claims. On the merits of the case, however, the intermediate appellate court affirmed.

The WSSC petitioned us to issue a writ of certiorari. The WSSC requested further that we stay enforcement of the mandate of the Court of Special Appeals pending our consideration of the petition. On 19 September 2014, we granted the WSSC's petition and motion to stay the enforcement of the intermediate appellate court's judgment, pending our consideration and disposition of the following questions:

> 1) Did the Court of Special Appeals err in holding that a [circuit court] may exceed the permissible scope of judicial review when considering a "deemed" rejection of a refund claim under PUA § 25-106?

> 2) Did the Court of Special Appeals err in upholding the [Circuit Court's] order mandating that WSSC's investigative files be produced as part of the agency record pursuant to Md. Rule 7-206?

*Washington Suburban Sanitary Commission v. Lafarge N. Am., Inc.*, 440 Md. 115, 99 A.3d 778 (2014).

## ANALYSIS

### I. *Appellate Jurisdiction*

Before the Court of Special Appeals, Lafarge sought a dismissal of the WSSC's appeal because: (1) PUA § 25-106(e) does not authorize expressly appellate review by the Court of Special Appeals of the judgment of the Circuit Court; (2) a refund request

before the WSSC is not a "contested case" for purposes of Maryland's Administrative Procedures Act; and, (3) the review requested by Lafarge before the Circuit Court cannot be considered alternately as a common law action for mandamus. As the argument goes, if the WSSC's appeal to the Court of Special Appeals was improper, its petition to us for a writ of certiorari is untimely. Although neither party argues before us that we or the intermediate appellate court lack fundamental jurisdiction over the subject matter of this case, an appellate court may consider, on its initiative, jurisdictional questions that it notices. *Waterkeeper Alliance, Inc. v. Maryland Dep't of Agric.*, 439 Md. 262, 275, 96 A.3d 105, 113 (2014); *Johnson v. Johnson*, 423 Md. 602, 606, 32 A.3d 1072, 1074 (2011); *Stachowski v. State*, 416 Md. 276, 285, 6 A.3d 907, 912 (2010*); Miller & Smith at Quercus, LLC v. Casey PMN, LLC*, 412 Md. 230, 240, 987 A.2d 1, 6-7 (2010); *Biro v. Schombert*, 285 Md. 290, 293, 402 A.2d 71, 73 (1979).

The right to appeal, except as authorized by constitution, is regulated entirely by statutes. *E.g.*, *Dvorak v. Anne Arundel Cnty. Ethics Comm'n*, 400 Md. 446, 450, 929 A.2d 185, 187 (2007); *Pack Shack, Inc. v. Howard Cnty.*, 371 Md. 243, 247, 808 A.2d 795, 797 (2002); *Subsequent Injury Fund v. Pack*, 250 Md. 306, 309, 242 A.2d 506, 509 (1968); *Switkes v. John McShain, Inc.*, 202 Md. 340, 343, 96 A.2d 617, 618 (1953). Maryland Code (1974, 2013 Repl. Vol.), Courts and Judicial Proceedings Article, § 12-301 ("CJP") provides a general right to appeal from a final judgment of a circuit court, subject to certain exceptions. One such exception is relevant to the present case: "[u]nless a right to appeal is expressly granted by law, [CJP] § 12-301 . . . does not permit an appeal from a final judgment of a court entered or made in the exercise of appellate

jurisdiction in reviewing the decision of . . . an administrative agency . . . ." CJP § 12-302.[9]

PUA § 25-106(e) provides expressly for judicial review by a circuit court of final action on a refund claim by the WSSC, but is silent regarding appellate review of that circuit court's judgment by the Court of Special Appeals. The panel of the Court of Special Appeals in the present case, looking to the legislative history of PUA § 25-106(e), concluded that the General Assembly intended to maintain allowance for such appellate review. According to the intermediate appellate court panel, the provision for this was left out mistakenly from the prior code provision during the relevant re-codification.

The apparent purpose of PUA § 25-106, its legislative history, and the canons of construction regarding re-codification initiatives of the Maryland Code indicate that the Legislature intended to allow appeals to the intermediate appellate court in the circumstances of the present case.[10] CJP § 12-302 does not authorize by implication,

---

[9]     We described briefly the history of this exception, from its origin in 1785 to relatively modern times, in *Gisriel v. Ocean City Bd. of Sup'rs of Elections*, 345 Md. 477, 487-90, 693 A.2d 757, 762-63 (1997).

[10]     The predecessor to PUA § 25-106(e) was Maryland Code (1957), Article 29, § 6-111(e), which stated:
> Within 30 days from the date of final action by the WSSC on a claim for refund filed under this section, *an appeal from the final action may be made to the circuit court and the appellate courts of this State* as provided in Title 7, Chapter 200 of the Maryland Rules. [emphasis supplied]

(Continued…)

however, appeals from circuit court judgments in water/sewer charge refund matters. The right to appeal must be "expressly granted by law." CJP § 12-302. Rather than inquire

---

(…continued)

As part of Maryland's decades-long re-codification efforts, Art. 29, § 6-111(e) was re-codified by Senate Bill 96 of 2010 as PUA § 25-106(e), which states:

> Within 30 days after the date of final action by the Commission on a claim for a refund filed under subsection (b) of this section, *a petition for judicial review may be filed with the circuit court* as provided in Title 7, Chapter 200 of the Maryland Rules. [emphasis supplied]

There are indications, however, that the Legislature did not intend to remove the ability to appeal (seek judicial review of) a circuit court's disposition of a refund claim to the intermediate appellate court. It is well established that, as a general rule, alterations in statutory language resulting from Maryland's code revision process are not intended to be substantive. *Comptroller of Treasury v. Blanton*, 390 Md. 528, 538, 890 A.2d 279, 285 (2006). The uncodified preamble to Senate Bill 96 and committee reports generated during the drafting process further indicate that the Legislature did not intend to change the substance of the pre-existing law with regard to access to the Court of Special Appeals.

The Revisor's Note provides insight into the intent of the Legislature. *Blanton*, 390 Md. at 538, 890 A.2d at 285 (citing *Dean v. Pinder*, 312 Md. 154, 163, 538 A.2d 1184, 1189 (1988); *Kane v. Schulmeyer*, 349 Md. 424, 435, 437, 708 A.2d 1038, 1044, 1045 (1998); *Briggs v. State*, 289 Md. 23, 30–31, 421 A.2d 1369, 1374 (1980)). The Revisor's Note to Bill 96 (PUA § 25-106) indicates generally that the "section is new language derived without substantial change . . . ." Regarding PUA § 25-106(e), it notes that "the former reference to filing an appeal with 'the appellate courts of this State' [was] deleted because according to the Maryland Rules, a petition for judicial review of an administrative decision shall be filed with the circuit court." The deletion appears intended to clarify that judicial review replaces the former reference to "appeals" and that review would be obtained first in a circuit court, but not to foreclose subsequent appellate review.

into the meaning of "expressly" in CJP § 12-302, we find an appropriate jurisdictional basis in Maryland's Administrative Procedure Act ("APA").[11]

Maryland's APA was enacted initially in 1957 to increase the perceived legitimacy of administrative agencies by imposing transparency, procedural regularity, and judicial review of agency actions. Edward A. Tomlinson, *The Maryland Administrative Procedure Act: Forty Years Old in 1997*, 56 Md. L. Rev. 196, 197-98 (1997). The current iteration of the APA regarding "contested cases" is codified in Title 10, Subtitle 2 of the State Government Article of the Maryland Code. Judicial review was (and remains) more robust regarding trial-like, quasi-adjudicatory proceedings of "contested cases" than agency rulemaking. *Id.* at 199.

Maryland Code (1984, 2014 Repl. Vol.), State Government Article, § 10-202(d) ("SG") defines "contested case":

> (1) "Contested case" means a proceeding before an agency to determine:
> (i) a right, duty, statutory entitlement, or privilege of a person that is required by statute or constitution to be determined only after an opportunity for an agency hearing; or
> (ii) the grant, denial, renewal, revocation, suspension, or amendment of a license that is required by statute or constitution to be determined only after an opportunity for an agency hearing.

---

[11] Lafarge argued before the intermediate appellate court that the appellate review provisions of Maryland's Administrative Procedure Act ("APA") do not apply to refund claims because refund claims, pursuant to PUA § 25-106, are not "contested cases" as defined in Maryland Code (1984, 2014 Repl. Vol.), State Government Article, § 10-202(d). The WSSC disagreed, as do we.

(2) "Contested case" does not include a proceeding before an agency involving an agency hearing required only by regulation unless the regulation expressly, or by clear implication, requires the hearing to be held in accordance with this subtitle.

Refund claims pursuant to PUA § 25-106, for which the claimant requests a hearing, are "contested cases." PUA § 25-106(a) grants a right to submit a claim for any fee or charge levied by the WSSC, except assessment or benefit charges authorized by Subtitle 2 of Title 25 of the Public Utilities Article.[12] Pursuant to PUA § 25-106(c)(2), upon the request of a claimant, the WSSC is *required* to hold a hearing. The object of a hearing generally is to determine whether the claimant is entitled to a refund under PUA § 25-106 and, if so, in what amount. Further, the WSSC is an "agency" for the purposes of the definition of a "contested case" as it (1) derives its existence from Division II of the Public Utilities Article of the Maryland Code, PUA § 17-101; (2) operates in portions of two counties, PUA § 17-501; and, (3) is authorized to hear contested cases pursuant to PUA § 25-106. *See* SG § 10-202(b).[13]

---

[12]    As noted above, charges for sewer usage are authorized by PUA § 25-503(a), and therefore, a refund claim for such charges may be asserted under PUA § 25-106.

[13]    SG § 10-202(b), defines agency as
          (1) an officer or unit of the State government authorized by
          law to adjudicate contested cases; or
          (2) a unit that:
              (i) is created by general law;
              (ii) operates in at least two counties; and
          (3) is authorized by law to adjudicate contested cases.

We held in *Donocam Associates v. Washington Suburban Sanitary Commission*, 302 Md. 501, 503, 489 A.2d 26, 27 (1985), that the WSSC is a state agency subject to the requirements of the APA and that a hearing regarding an assessment to fund the construction of additional sewer and water lines was a "contested case." 302 Md. at 503, 489 A.2d at 27, *cited with approval in Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 631, 994 A.2d 411, 426 (2010). Although the procedures of the hearing required in *Donocam* were not elaborated in the statute, we concluded that the hearing would fall necessarily under the ambit of the requirements of the APA. *Donocam*, 302 Md. at 513, 489 A.2d at 32 (1985).

Because refund claims pursuant to PUA § 25-106 in which a hearing is requested are "contested cases" pursuant to Maryland's APA, an appeal to the Court of Special Appeals was authorized here. The State Government Article, § 10-223 authorizes appeals to the intermediate appellate court "in the manner that law provides for appeal of civil cases."

Lafarge's petition for judicial review, the WSSC's appeal to the intermediate appellate court, and its petition to us for a writ of certiorari were timely. The WSSC appealed the decision of the Circuit Court within 30 days of the judgment of the Circuit Court, as required by Maryland Rule 8-202, and petitioned us for a writ of certiorari within 15 days after Court of Special Appeals issued its mandate, as required by Maryland Rule 8-302. The present case is properly before us.

13

## II. *Reversal of the Deemed Denial*

The WSSC argues that the Circuit Court's scope of review of the "deemed denial" of Lafarge's refund claim was limited to determining whether there was substantial evidence in the record to support the denial. According to the WSSC, upon finding a lack of substantial evidence, the Circuit Court did not have then the authority to engage in its own factual inquiry whether Lafarge was entitled to a refund. The agency argues that the Circuit Court was authorized only to remand the case to the WSSC to engage in a fact-finding hearing and issue an appropriate decision based on the evidence, i.e., the court should order a "do-over," with the potential that the WSSC could deny the claim altogether. Although the WSSC states correctly the general standard of judicial review of agency decisions, it misunderstands (conveniently) the intent of the Legislature's codification of PUA § 25-106 and how the courts may carry-out best that intent.

The WSSC's refund process, and the Circuit Court's authority to review refund actions (or failures to act resulting in a final denial decision by operation of law) of the WSSC, derives from PUA § 25-106. Our primary goal when interpreting statutes is to ascertain and effectuate the intent of the Legislature. *Williams v. Peninsula Reg'l Med. Ctr.*, 440 Md. 573, 580, 103 A.3d 658, 663 (2014); *Johnson v. Mayor & City Council of Baltimore City*, 387 Md. 1, 11, 874 A.2d 439, 445 (2005); *Witte v. Azarian*, 369 Md. 518, 525, 801 A.2d 160, 165 (2002). We look first to the text of the statute, and "[i]f the language of the statute is unambiguous and clearly consistent with the statute's apparent purpose, our inquiry as to legislative intent ends ordinarily and we apply the statute as written, without resort to other rules of construction." *Lockshin v. Semsker*, 412 Md. 257,

14

275, 987 A.2d 18, 28-29 (2010); *accord Bost v. State*, 406 Md. 341, 350, 958 A.2d 356, 361 (2008) (citing *Ishola v. State,* 404 Md. 155, 160, 945 A.2d 1273, 1276 (2008)); *Moore v. State*, 388 Md. 446, 453, 879 A.2d 1111, 1114 (2005).

PUA § 25-106 makes clear that the Legislature intended for refund claims to be investigated and decided within 180 days from the filing of the claim. If the WSSC falls short of this benchmark, the resultant deemed denial of the claim by operation of law is subject to judicial review. The relevant portions of PUA § 25-106 provide:

> (b) *Claims.* — (1) A person may file a written claim with the Commission, in a form and containing the information and supporting documents required by the Commission, for a refund of the amount of a fee or charge the person paid to the Commission that exceeds the amount that is properly and legally payable.
> ****
> (c) *Investigation.* — (1) On the receipt of a claim for a refund under subsection (b) of this section, the Commission shall investigate the merits of the claim.
> (2) On the request of the claimant, the Commission, or the Commission's designee, shall hold a hearing on the claim.
> ****
> (4) The Commission shall pay interest on any amount refunded under this section, calculated at the rate of 6% per year, starting 180 days from the date the claim was made.
> (d) *Failure to reach a final decision.* — If the Commission fails to reach a final decision on a claim within 180 days after the date the claim is filed, the failure shall be deemed a final rejection of the claim.
> (e) *Judicial Review.* — Within 30 days after the date of final action by the Commission on a claim for a refund filed under subsection (b) of this section, a petition for judicial review may be filed with the circuit court as provided in Title 7, Chapter 200 of the Maryland Rules.

The legislative choice to use the mandatory word "shall" indicates that the General Assembly intended for the 180 day limitation not to be discretionary or without

15

consequences.[14] *See, e.g.*, *Perez v. State*, 420 Md. 57, 63, 21 A.3d 1048, 1052 (2011) ("As this Court and the intermediate appellate court have reiterated on numerous occasions, the word "shall" indicates the intent that a provision is mandatory.") (citing *State v. Green*, 367 Md. 61, 82, 785 A.2d 1275, 1287 (2001)); 1A Norman J. Singer & J. D. Shambie Singer, *Sutherland Statutory Construction* § 25:4 (7th ed.). PUA § 25-106(d) supplies a result if the WSSC fails to meet the statutory deadline: "the failure shall be deemed a final rejection of the claim." The claimant may move-on then and seek judicial review of the deemed denial. *See* PUA § 25-106(e).[15, 16]

---

[14] The WSSC does not dispute the mandatory nature of its obligation to hold a hearing (if requested) and render a decision on a refund claim pursuant to PUA § 25-106 within 180 days.

[15] The WSSC incants an alternative narrative based on a letter found within the bill file for House Bill 1170 of 1986, which would become codified as Art. 29, § 6-11 and re-codified later as PUA § 25-106(e). As first presented, Bill 1170 allowed for *de novo* appeals to the Tax Court of denied refund requests. Without explanation for the sake of posterity, the Bill was amended in committee to authorize judicial review by a circuit court.

The WSSC asserts that authorizing judicial review of deemed denials was a drafting mistake. According to the agency, the Legislature intended there to be additional *de novo* proceedings before another agency (the Maryland Tax Court) after a deemed denial pursuant to PUA § 25-106(d), not judicial review as a plain reading of the statute would suggest.

The WSSC's urging does not overcome the unambiguous plain language of the resultant statute. "We cannot assume authority to read into the Act what the Legislature apparently deliberately left out. Judicial construction should only be resorted to when an ambiguity exists." *Price v. State*, 378 Md. 378, 388, 835 A.2d 1221, 1226 (2003) (quoting *Howard Contr. Co. v. Yeager*, 184 Md. 503, 511, 41 A.2d 494, 498 (1945)). PUA § 25-106(d) is clear that a refund claim is considered a final denial by operation of law if the WSSC does not issue a decision within 180 days. PUA § 25-106(e) is

(Continued…)

16

The WSSC's interpretation would render nugatory portions of PUA § 25-106. If the Circuit Court was obliged merely to remand the case to the WSSC for a complete "do-over," without consequences, after the agency failed to develop a more complete agency record and decide the case within 180 days, the purposes underlying PUA § 25-106(d) would be meaningless indeed. Even without the deemed-denial provisions of PUA § 25-106(d), after the passage of 180 days, a common law mandamus action might lie.[17]

---

(…continued)
unambiguous that a claimant may petition the proper circuit court for judicial review of such a denial. Attempting to uncover hidden meaning in the statute from a disregarded portion of legislative history is more likely to frustrate the will of the Legislature than advance it.

[16]    It seems rather predictable what the outcome of judicial review will be in the probable majority of denial by operation of law refund cases where the WSSC failed to act timely. There is a high order of probability that the agency "record" in such cases will be as scanty as was the case here, leaving little or no basis for upholding the denial based on "substantial evidence" analysis where the only "evidence" is the refund requestor's refund and hearing requests. The outcome is foreseeable and may be referred to popularly as a "slam dunk."

[17]    Mandamus is "an original action used to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which duty the party applying for the writ has a clear legal right." *Town of La Plata v. Faison-Rosewick LLC*, 434 Md. 496, 511, 76 A.3d 1001, 1010 (2013) (quoting *Goodwich v. Nolan*, 343 Md. 130, 145, 680 A.2d 1040, 1047 (1996)) (internal quotation marks omitted). "[A] common law mandamus action is appropriate where the relief sought involves the traditional enforcement of a ministerial act (a legal duty) by recalcitrant public officials, but not where there is any vestige of discretion in the agency action or decision. *Id.* (quoting *South Easton Neighborhood Ass'n v. Town of Easton*, 387 Md. 468, 477 n. 3, 876 A.2d 58, 63 n. 3 (2005)) (internal quotation marks omitted). "Ministerial acts are duties in respect to which nothing is left to discretion and are distinguished from those allowing freedom and authority to make decisions and choices. *Faison-Rosewick*, 434 Md. at 511-12, 76 A.3d at 1010 (quoting *Talbot Cnty. v. Miles Point Prop., LLC*, 415

(Continued…)

17

We will not interpret statutes in such a way as to render them meaningless or nugatory, if reasonable alternatives are available. *E.g.*, *Whiting–Turner Contracting Co. v. Fitzpatrick*, 366 Md. 295, 302–303, 783 A.2d 667, 672 (2001), *quoted with approval in Miller v. Mathias*, 428 Md. 419, 451, 52 A.3d 53, 72 (2012).

PUA § 25-106 is a remedial statute.[18] As such, the statute must be construed liberally to effectuate the remedial purpose of the legislation. *Employees' Ret. Sys. of City of Baltimore v. Dorsey*, 430 Md. 100, 113, 59 A.3d 990, 997 (2013) (citing *Marsheck v. Bd. of Trustees of Fire & Police Employees' Ret. Sys. of City of Baltimore*, 358 Md. 393, 403, 749 A.2d 774, 779 (2000)); *Washington Suburban Sanitary Comm'n v. Phillips*, 413 Md. 606, 620, 994 A.2d 411, 420 (2010); *Elste v. ISG Sparrows Point, LLC*, 188 Md. App. 634, 653, 982 A.2d 938, 949 (2009). Three goals are evinced by the plain language

---

(…continued)
Md. 372, 397, 2 A.3d 344, 359 (2010)) (internal quotation marks omitted). Absent the judicial review scheme allowed by PUA § 25-106, however, mandamus would be available as a means to compel the WSSC to fulfil its procedural obligations under the statute.

[18]    "'Under Maryland law, statutes are remedial in nature if they are designed to correct existing law, to redress existing grievances and to introduce regulations conducive to the public good.'" *Langston v. Riffe*, 359 Md. 396, 409, 754 A.2d 389, 396 (2000) (quoting *Weathersby v. Kentucky Fried Chicken Nat'l Management Co.*, 86 Md. App. 533, 550, 587 A.2d 569, 577 (1991)); *accord State v. Barnes*, 273 Md. 195, 208, 328 A.2d 737, 745 (1974). Also described as remedial are "statutes intended to correct defects, mistakes and omissions in the civil institutions and the administration of the state." 3 Norman J. Singer & J. D. Shambie Singer, *Sutherland Statutory Construction* § 60:2 (7th ed.) (citing *Langston*, 359 Md. at 396, 754 A.2d at 389). PUA § 25-106(a) provides a remedy for overcharges by the WSSC, subsection (d) requires the WSSC to determine the validity of a refund claim within 180 days, and subsection (e) provides for judicial review to ensure the agency's compliance. The orderly and timely administration by the WSSC is central to the statute, with consequences provided for failure.

18

of PUA § 25-106: (1) to refund charges assessed improperly by the WSSC[19]; (2) for the WSSC to determine timely refund claims (i.e., within 180 days); and, (3) for judicial review of denied claims.

Adopting the WSSC's interpretation would frustrate the remedial aims of PUA § 25-106. Providing the WSSC with a second opportunity to consider outright denial of a refund would mock the requirement of timely determination of refund claims and render judicial review a waste of scarce judicial resources.

Courts are inhibited, however, in their exercise of judgment as to how to effectuate the will of the Legislature. As the WSSC points out, Article 8 of the Declaration of Rights in the Maryland Constitution (requiring separation of legislative, executive, and judicial powers) prevents the courts from making *de novo* administrative decisions in cases in which some exercise of agency expertise or discretion may yet remain to be

---

[19] Passage of the predecessor to PUA § 25-106 was motivated in part, it seems, by our decision in *Washington Suburban Sanitary Commission v. C.I. Mitchell & Best Co.*, 303 Md. 544, 495 A.2d 30 (1985). In *C.I. Mitchell & Best Co.*, a class of plaintiffs sought the refund of assertedly improper payments to the WSSC and a declaratory judgment that the assessment charging scheme was improper. 303 Md. 544, 553, 495 A.2d 30, 34. Ultimately, we held that the charges were illegal, but that Maryland's voluntary payment rule prevented a refund of the charges. *C.I. Mitchell & Best Co.*, 303 Md. 544, 549, 495 A.2d 30, 32.

Fourteen days after we filed an order of denial of a motion for reconsideration in *C.I. Mitchell & Best Co.*, the attorney who represented the claimants sent a letter to a member of the House of Delegates advocating the need for legislation authorizing refunds for improper WSSC charges and offering suggestions how to accomplish that goal. Letter from Charles G. Dalrymple, Esq., to Del. Jerry H. Hyatt (September 25, 1985) (in bill file of Maryland House Bill 1170 of 1986). In January of 1986, Delegate Hyatt drafted and submitted the bill to the General Assembly. The letter found eventually its place in the bill file retained by the Department of Legislative Services.

applied. *See Dep't of Natural Res. v. Linchester Sand & Gravel Corp.*, 274 Md. 211, 228, 334 A.2d 514, 525 (1975). Because agency expertise may be exercised by the WSSC in determining the appropriate amount of the charges collected in error, it would be unconstitutional for a court to consider *de novo* the amount of a refund claim where that issue has not been adjudicated administratively as yet.

The Circuit Court, while sailing its course to a proper resolution of the present case, avoided both the Scylla of running afoul of the Declaration of Rights and the Charybdis of interpreting PUA § 25-106 contrary to the intent of the Legislature. The intent of the Legislature codified in PUA § 25-106 demands that the case not be remanded to the WSSC back to "Square One." The Declaration of Rights bars the courts from considering evidence *de novo* and judicial review prevents it as well. The Circuit Court violated neither principle by reversing the deemed rejection by the WSSC and ordering remand for the agency to calculate and issue an appropriate refund according to its standard procedures.

The Circuit Court's decision in the present case was not outside the normal scope of judicial review in the main. A court reviewing an agency decision must decide, based on whatever the record reveals, whether the agency's decision is supported by "substantial evidence" and whether the discretionary determinations of the agency may be maintained in the face of the "arbitrary and capricious" standard. *See Spencer v. Maryland State Bd. of Pharmacy*, 380 Md. 515, 530 n.4, 846 A.2d 341, 349 n.4 (2004). Indeed, in most "denied by operation of law" cases (at least where the agency record contains absolutely no basis for denial or an explanation for why an actual timely hearing

20

and decision was not made), a reviewing court would be hard-pressed, on judicial review, not to reverse the deemed denial. In the present case, the record consisted only of Lafarge's 6 March 2012 refund request and its 9 April 2012 hearing request (with supporting attachments), as the WSSC maintained.[20] Based on the agency "record," the deemed denial of Lafarge's claim was not supported by substantial evidence.[21] The trial court also found that the WSSC's failure to decide affirmatively Lafarge's claim was arbitrary and capricious.

Although a case should be remanded ordinarily to an agency when the reviewing court determines that the agency decision was not supported by substantial evidence or was arbitrary and capricious, s*ee, e.g., Maryland Bd. of Pub. Works v. K. Hovnanian's Four Seasons at Kent Island, LLC*, 425 Md. 482, 522, 42 A.3d 40, 63 (2012); *Bereano v. State Ethics Comm'n*, 403 Md. 716, 756, 944 A.2d 538, 561 (2008), doing so for deemed denials pursuant to PUA § 25-106, without limitation, would be contrary to the purposes underlying the statute, as we have noted above.[22] The only path forward is to reverse a

---

[20] For the reasons discussed below in Part II, we decline to determine whether the investigative materials were properly part of the record in the posture in which the case reached the Circuit Court.

[21] The WSSC does not argue to us that there was substantial evidence to support the denial of Lafarge's claim. The agency admits that the record was not developed sufficiently to support denial of some refund amount.

[22] The court need not remand to the administrative agency if doing so would be futile. *O'Donnell v. Bassler*, 289 Md. 501, 510, 425 A.2d 1003, 1008 (1981); *see also Green v. Church of Jesus Christ of Latter-Day Saints*, 430 Md. 119, 143, 59 A.3d 1001, 1015 (2013) (ordering the case remanded to the Tax Court, but directing the Tax Court's

(Continued…)

deemed denial by the WSSC that is unsupported by substantial evidence or arbitrary and capricious.

*Anne Arundel County v. Halle Development, Inc.*, 408 Md. 539, 971 A.2d 214 (2009) is instructive.[23] In *Halle Development*, a class of property owners sought to recover development impact fees that they argued were assessed improperly by Anne

(…continued)

decision); *Anne Arundel Cnty. v. Halle Dev., Inc.*, 408 Md. 539, 557, 971 A.2d 214, 225 (2009) ("The County's appeal to *Frankel* [*v. Bd. of Regents of Univ. of Maryland Sys.*, 361 Md. 298, 301, 761 A.2d 324, 325 (2000)] and general administrative law principles in arguing for a remand presumes, erroneously, that there is an administrative procedure and function that remains to be performed in this case."). In the present case, although there remains the possibility for additional fact-finding as to the proper amount of the refund due Lafarge, permitting the outright denial of the claim would be contrary to the intent of the Legislature codified in PUA § 25-106, and hence contrary to law. The only decision that the WSSC may make consistent with the intent of the Legislature is to determine the proper amount of the refund due. The option to deny Lafarge's claim is foreclosed by the failure to act within the allowed 180 days.

[23] The property-owner plaintiffs in *Halle Development* did not petition for judicial review. Rather, they claimed that the failure to refund impact fees: "(1) constituted an unconstitutional taking under the Fifth and Fourteenth Amendments, (2) violated the Owners rights under the Article 24 of the Maryland Declaration of Rights, and (3) unjustly enriched the County, creating the basis for a constructive trust." *Halle Dev.*, 408 Md. at 547, 971 A.2d at 219. Nevertheless, determination of the case required review of administrative decisions and actions. *See Halle Dev.*, 408 Md. at 552, 971 A.2d at 222. When the courts review the decisions of an administrative agency, "the standard of review is the same," regardless of the grounds upon which the action was filed. *Bowen v. City of Annapolis*, 402 Md. 587, 611, 937 A.2d 242, 256 (2007) ("[T]he basis of judicial review of an administrative decision may be by explicit statutory authorization or by a common law or equity writ. . . . Regardless of the basis for judicial review, the standard of the review is the same."); *Harvey v. Marshall*, 389 Md. 243, 296, 884 A.2d 1171, 1203 (2005) ("Maryland cases suggest that 'an administrative proceeding, even if not subject to judicial review under the APA, would be subject to judicial review, of essentially the same scope, in an action for mandamus, certiorari, injunction or declaratory judgment . . . .'") (quoting *Med. Waste Assocs. v. Maryland Waste Coalition*, 327 Md. 596, 610, 612 A.2d 241, 248 (1992)).

Arundel County. 408 Md. at 543, 971 A.2d at 216. The Circuit Court for Anne Arundel County held that the property owners were entitled to refunds. *Id.* The Court of Special Appeals, in an unreported opinion, affirmed the judgment of the Circuit Court. *Halle Dev.*, 408 Md. at 551, 971 A.2d at 221. We issued a writ of certiorari to consider, among other questions, whether the Circuit Court erred by declining to remand fully the case after reversing decisions of the County administrative officials. *Halle Dev.*, 408 Md. at 551-52, 971 A.2d at 221. The County contended that the Circuit Court was obligated to remand the case. We affirmed.

We concluded in *Halle Development* that no administrative function remained to be performed after the County agency failed to perform administrative functions within the required time period. *Halle Dev.*, 408 Md. at 558-59, 971 A.2d at 225. We refused to allow the county "to go back and make administrative decisions that it failed to effectively execute when permitted." *Halle Dev.*, 408 Md. at 559, 971 A.2d at 226.

In *Halle Development*, the Circuit Court remanded for the precise determination of which property owners were eligible for refunds.[24] 408 Md. at 550, 971 A.2d at 220. The trial court did not attempt to determine exactly which charges were assessed properly against which property owners. Instead, the Circuit Court remanded for additional determination by the County agencies, which decision would be subject to subsequent judicial scrutiny.

---

[24] Where agency expertise or discretion is required typically, it might interfere with an agency function to reverse without remanding the case to the relevant agency, but with appropriate limiting directions.

The present case shares the key considerations reflected in *Halle Development*. As in *Halle Development*, the administrative agency is obliged to act within a limited time period, but failed to fulfil its obligation. In both cases, a circuit court ordered the agency to issue a refund, without giving the agency a second chance to determine whether to deny outright a refund. Finally, in both cases, additional agency consideration was ordered regarding the proper amount of the refund owed.[25]

Given the legislative intent to provide for refunds when charges are assessed improperly, it is appropriate to remand the case to the WSSC for calculation of the amount of the refund due. The legislative intent evident from the plain language of PUA § 25-106 is that refunds should be issued for improperly assessed charges.[26, 27]

### III. *Production of the Investigative File*

Our holding regarding the Circuit Court's reversal of the WSSC's deemed denial of Lafarge's claim and limited remand renders moot the WSSC's question regarding the authority of the Circuit Court to order production of the agency's investigative file,

---

[25] On appeal, the WSSC did not take exception to the part of the Circuit Court's order requiring that the refund be calculated in accordance with Standard Procedures for Adjustment and Correction of Water/Sewer Bill, SP Number CUS 10-01. Further, if CUS 10-01 is a standard and uniform method of determining refunds, as the parties' memoranda before the Circuit Court (and the document's title and content) suggest, then it might be arbitrary and capricious for the WSSC to calculate Lafarge's refund using a different standard.

[26] In addition to the provisions cited above, PUA § 25-106(f) authorizes refunds for excess charges even if there is no pending claim for the refund.

[27] In the circumstances of the present case, a hearing on remand is possible, but would be limited to inquiry as to the proper amount of the refund.

whether for consideration as part of the agency "record" or otherwise. We note, however, an observation or two as to this contretemps because instances of judicial review of deemed denials by operation of law are "an exotic bird in these woods." [28]

The WSSC does not claim any prejudice resulting from the production of the investigative file. Indeed, production of additional documents could help furnish the sparse administrative record with evidence sufficient to justify the deemed denial. By the same token, this sort of "evidence" had not been tested by the crucibles of examination/cross-examination (if a witness or witnesses were called to authenticate or identify the documents) or rebuttal evidence. Nonetheless, "[i]t is the policy of this Court not to reverse for harmless error and the burden is on the appellant in all cases to show prejudice as well as error." *Crane v. Dunn*, 382 Md. 83, 91, 854 A.2d 1180, 1185 (2004) (citing *Rippon v. Mercantile Safe Deposit Co.*, 213 Md. 215, 222, 131 A.2d 695, 698 (1957)). As such, we decline to determine whether the Circuit Court erred by ordering the WSSC to produce, in this judicial review proceeding, additional documents from the agency's preliminary investigation of the claim. Generally, supplementation of an agency record while on judicial review is not permitted, except where agency bias or improper ex parte communications are asserted. *See Montgomery Cnty. v. Stevens*, 337 Md. 471, 484-85, 654 A.2d 877, 883-84 (1995); *c.f.* SG § 10-222(f) (indicating that additional evidence should generally be collected by the agency).

---

[28] This descriptive phrase was spoken by the Frank Underwood character in the U.S. version of "House of Cards." *House of Cards: Chapter 5* (Media Rights, Capital Panic Pictures (II), Trigger Street Productions 2013).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.**